PEOPLE v SPAULDING

1. RAPE—ALIBI—INSTRUCTIONS TO JURY.

An instruction to the jury that if they found that the prosecution did not prove defendant guilty of rape beyond a reasonable doubt and that if they believed defendant's alibi they should find defendant not guilty was not reversible error where defense counsel failed to object to the instruction although he had ample opportunity to do so and where the instruction, when read in its entirety, did not prejudice defendant.

2. RAPE—CORPUS DELICTI—INSTRUCTIONS TO JURY—IDENTIFICATION.

An instruction to the jury which eliminated the question of whether a rape had been committed, leaving only the question of whether defendant was the perpetrator of the crime, was not reversible error where defense counsel neither objected to it nor requested a curative instruction.

3. RAPE—CORPUS DELICTI—INSTRUCTIONS TO JURY—IDENTIFICATION— PREJUDICE.

An instruction to the jury which limited their consideration to the question whether defendant had committed the crime of rape did not prejudice defendant and was not reversible error where the commission of the crime was not in dispute, the sole controversy being over who committed it.

4. CRIMINAL LAW—FAIR TRIAL—JUDGE'S COMMENTS.

A trial judge's comments and interruptions did not cause the jury to be prejudiced against the defendant, thus denying him a fair trial, where the judge's remarks for the most part were confined to clearing up ambiguities in the testimony elicited on direct and cross-examination.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 5] 65 Am Jur 2d, Rape §§ 108–111.
[2] 65 Am Jur 2d, Rape § 89.
[4] 21 Am Jur 2d, Criminal Law § 221.
[6] 21 Am Jur 2d, Criminal Law § 298.
[7] 65 Am Jur 2d, Rape § 64.

5. RAPE—EVIDENCE—IDENTIFICATION—DESCRIPTION—RES GESTAE.

A description of a rapist given to police by a 14-year-old complainant shortly after the commission of the rape, with little or no time for fabrication of the description, was admissible as part of the *res gestae.*

6. CRIMINAL LAW—CLOSING ARGUMENT—PREJUDICE.

An appellate court will not reverse a conviction in a criminal case because of claimed errors during argument unless such arguments are of a prejudicial nature and contribute to an improper verdict.

7. RAPE—IDENTIFICATION—INDEPENDENT BASIS—ILLEGAL CONFRONTATION.

An in-court identification of the defendant by the victim in a prosecution for rape was not tainted by her prior illegal confrontation of the defendant at his home where the complainant testified that she had seen the defendant in the neighborhood on numerous occasions before the crime, she knew where he lived, she explained in detail how she was able to observe defendant closely during the commission of the crime, and her description of the defendant was consistent throughout the trial and the various proceedings leading up to the trial (MCLA 750.520).

Appeal from Kent, John H. Vander Wal, J. Submitted Division 3 June 12, 1972, at Grand Rapids. (Docket No. 12034.) Decided August 29, 1972. Leave to appeal denied, 388 Mich 809.

Edward B. Spaulding was convicted of statutory rape. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *Donald A. Johnston, III,* Chief Appellate Attorney, for the people.

*David A. Goldstein,* Assistant State Appellate Defender, for the defendant.

Before: Fitzgerald, P. J., and Holbrook and T. M. Burns, JJ.

T. M. Burns, J. On March 18, 1971, defendant Edward Spaulding was convicted by a jury of statutory rape pursuant to MCLA 750.520; MSA 28.788. He was sentenced May 10, 1971, to a term of from 5 to 15 years imprisonment. Defendant appeals as of right.

The victim of the rape testified that while she was walking down the street on the evening of October 5, 1970, a man came out of the bushes and put his hand over her mouth and eyes. Her assailant then dragged her in back of a house and there forced her to submit to sexual intercourse. She testified that he told her to lie down and that when she did, she was face to face with him and could identify him. Thereupon he put his hands over her eyes, took off his clothes and committed the act. Afterwards, he told her to turn over and count to 20. She did so, got up, and saw no one.

The victim immediately reported the incident to a relative who promptly summoned the police. When the police arrived, the victim told them that defendant Spaulding was the man who had perpetrated the rape. She also told the officers where the defendant resided. After they had finished their questioning, the police, accompanied by the victim, drove by the scene of the rape and by the house where the defendant lived. The police cruiser nearly came to a stop in front of the Spaulding home. One of the officers shone a spotlight on the front of the house for the purpose of ascertaining the street number. The officer obtained the number and shut off the light. At this juncture, the porch light of the house came on and defendant Spaulding appeared on the porch. The

victim turned around, looked through the rear window of the police cruiser and stated, "There he is, that is him". Thereupon defendant was arrested.

On March 4, 1971, defendant timely filed a notice of alibi. At the trial, defendant's wife and two stepsons testified that at the time the rape occurred, defendant was home with them watching television.

At the beginning of defendant's trial, both the prosecution and the defense stipulated that shortly after the rape had been committed, a physician examined the victim and found lesions and the presence of sperm in her vaginal area. It was also agreed that she was 14 at the time the offense was committed.

On appeal defendant raises six issues. We will discuss them in the order presented below.

1. *Did the trial court's charge to the jury shift the burden of proving an alibi to the defendant, thereby violating due process?*

The particular portion of the instruction which forms the heart of defendant's claim is quoted below:

"If you find that they haven't proved that (defendant was the man) to your satisfaction beyond a reasonable doubt and you believe the alibi, it would be your duty to find the respondent not guilty."

From this, defendant argues that the trial court reversibly erred in its instruction to the jury on alibi by shifting the burden of proof from the prosecution to the defendant by stating that in order to find the defendant not guilty, the jury would have to "believe the alibi". Moreover, defendant contends that such error was not harmless and defense counsel's failure to object to the error

at the trial does not preclude raising it on appeal. We disagree.

When reviewing an instruction to determine whether or not it stated the applicable law or prejudiced the defendant, we will examine the instruction as a whole rather than in small excerpts. *People v Pearson,* 13 Mich App 371 (1968), and *People v Haggai,* 332 Mich 467 (1952). Moreover, it is well settled that, absent a showing of manifest injustice, criminal defendants seeking a review of allegedly erroneous instructions to the jury must make a timely objection to those instructions in accordance with GCR 1963, 516.2 which provides:

"2. Objections. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

See also *People v Tubbs,* 22 Mich App 549 (1970); *People v Keys,* 9 Mich App 482 (1968); *People v Keiswetter,* 7 Mich App 334 (1967), and *People v Cassiday,* 4 Mich App 215 (1966).

A review of the record in the instant case indicates that although defense counsel was given ample opportunity to object to the instruction given by the court before the jury retired, no such objection was voiced.

Furthermore, after a close reading of the trial court's entire alibi instruction, we are not convinced that, taken as a whole, defendant was prejudiced thereby.*

---

* See jury instructions, *infra.*

Defendant's argument raised here for the first time on appeal is, therefore, without merit.

2. *Did the trial court err by withdrawing from the jury's consideration the fact that the crime had been committed, thereby limiting the scope of the jury's consideration to the question of identification?*

The defendant contends that the trial court erred in its instruction to the jury by eliminating the question of whether or not a rape had been committed, leaving only the question of whether the defendant was the perpetrator of the crime.

The portion of the charge criticized by defendant reads as follows:

"So, the only question that the jury has to decide is, was this offense committed by the defendant, Mr. Spaulding, that is your only question.

"So, take this case and analyze all the evidence, determine what the facts are and if you find that the prosecution has proved by evidence beyond a reasonable doubt that Mr. Spaulding was the man, then it would be your duty to find him guilty as charged."

Defendant's position is not well taken. Defense counsel neither made an objection nor requested a correction of the instruction here in question. Any objections to the trial court's instructions must be raised at the time the instructions are given or else, absent manifest prejudice to the defendant, they are waived. GCR 1963, 516.2; *People v Tubbs, supra.*

Notwithstanding defense counsel's failure to object, we will next turn to the question of whether defendant was prejudiced by the trial court's instruction.

In *People v Griffin,* 36 Mich App 368, 371 (1971), which involved a prosecution for second-degree

murder, the trial judge in his charge to the jury stated:

"I may say that I don't believe this jury is going to have much difficulty in arriving at the conclusion that a felonious assault was committed, and that the homicide was second-degree murder."

This Court held:

"The comment was improper, and if the fact that a homicide had been committed had been disputed, it would require reversal, *People v Wichman,* (1968), 15 Mich App 110. However, the fact that a homicide had been committed was not disputed at trial. The contest was over who did it and defendant's defense was that he did not do it. If the comment was error, it was not reversible error."

Such is the case here. The prosecution and the defense stipulated that the victim was 14, and that shortly after the rape, a physician found torn tissue and sperm in her vaginal area. Furthermore, defense counsel in the closing argument admitted the victim had been raped and stated that the only question for the jury to determine was whether or not defendant was the perpetrator. The fact that a statutory rape had been committed was not in dispute. The sole controversy was over who did it.

We hold, therefore, that the defendant was not prejudiced by the trial court's instruction which limited the jury's consideration to a question of identification of the perpetrator of the crime, where the fact that the crime had been committed was not in dispute.

3. *Was the defendant denied a fair and impartial trial due to the bias and partiality exhibited by the trial court?*

Next defendant asserts that he was prejudiced by various remarks and interruptions made by the trial judge during the course of the trial. Defendant's assertion is without merit.

The standard by which a trial judge's conduct is reviewed was recently stated in *People v Roby,* 38 Mich App 387, 389 (1972):

"In determining the effect of comment and interrogation by the trial judge, the applicable test is whether what occurred prevented defendant from having a fair and impartial trial. *People v Cole,* 348 Mich 175 (1957); *People v O'Hara,* 278 Mich 281 (1936)."

After a thorough review of the transcript in the present case, we find no indication that the trial court's comments and interruptions caused the jury to be prejudiced against the defendant. The trial judge's remarks for the most part were confined to clearing up ambiguities in the testimony elicited on direct and cross-examination.

We find, therefore, that the trial in the instant case as opposed to the one in *People v Roby, supra,* was handled fairly, impartially, and without prejudice to the defendant.

4. *Did the trial court err by allowing the arresting officers to repeat statements made by the victim of the rape about the description of her attacker?*

It is the defendant's position that it was reversible error to allow the arresting officers to repeat the description of the attacker given to them by the victim of the rape.

At trial, the arresting officers testified as to the description of the rapist which was given to them by the victim within 45 minutes after the rape occurred.

The only authority cited by defendant which is

applicable here is *People v Baker,* 251 Mich 322 (1930). However, *Baker* only says that the details of a rape cannot be corroborated by other witnesses, subject to the exception where testimony is part of the *res gestae* or the victim is of tender years. See 4 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 2191, pp 2414–2417.

Putting aside the semantic question of whether the details of a rape would include a description of the assailant, we conclude that here the description of the rapist given to the police shortly after the occurrence of the event, thereby allowing little or no time for fabrication, was admissible as part of the *res gestae. People v Bonneau,* 323 Mich 237 (1948); *People v Woodward,* 21 Mich App 549 (1970); *People v Noble,* 23 Mich App 100 (1970).

5. *Were statements made by the prosecutor during closing argument so prejudicial as to deny the defendant a fair trial?*

Defendant argues that he was denied a fair trial by the prosecutor's closing argument and assigns error to 13 comments made by the prosecutor during the closing argument. Defense counsel admits that he made no objections but claims this does not preclude review in that a cautionary instruction would not have eliminated the prejudice. See *People v Humphreys,* 24 Mich App 411 (1970). We disagree.

The law governing the permissible scope of the prosecutor's argument was quoted from 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 621, pp 804–805, in *People v Dawson,* 29 Mich App 488, 494 (1971), as follows:

" 'It is only in a very clear case of abuse shown by remarks of the prosecuting attorney, where the respondent's rights have been prejudiced, that the court will set aside a verdict otherwise manifestly proper. The

appellate court is not inclined to reverse convictions in criminal cases because of claimed errors during argument, unless such arguments are of a prejudicial nature and contribute to an improper verdict. It is not presumed that jurors in direct violation of their well-known duty will indulge in unjustifiable inferences from remarks made by counsel during the heat of the trial.' "

We have carefully reviewed the alleged prejudicial remarks in conjunction with the trial court's cautionary instruction concerning counsel's closing arguments and conclude that no clear abuse has been shown and further that the prosecutor's summation read as a whole was not so prejudicial as to deny defendant a fair trial. See *People v Lyle Brown,* 37 Mich App 25 (1971), and *People v David Smith,* 16 Mich App 198 (1969).

6. *Was the street confrontation in which defendant was identified a violation of defendant's Sixth Amendment rights and a violation of due process?*

Finally defendant asserts that the victim's in-court identification was inadmissible as a result of a prior identification at his home which was "so unnecessarily suggestive and conducive to irreparable mistaken identity that he was denied due process of law".

Assuming, but not deciding, that the confrontation at defendant's home was a violation of defendant's rights, the in-court identification is nonetheless admissible if it had an independent basis. *People v Maniez,* 34 Mich App 55 (1971).

The factors to be considered in ascertaining whether an in-court identification had a sufficient independent basis were set forth in *People v Hutton,* 21 Mich App 312, 326 (1970) as follows:

" 'And among the facts to be considered in applying this test are: the witness' prior opportunity to observe

the alleged criminal act; the existence of any discrepancy between any pretrial description and the defendant's actual appearance; any identification of another person before confrontation; photogenic identification before confrontation; failure to identify the defendant on a prior occasion; and the lapse of time between the alleged act and the confrontation identification.' "

Using the *Hutton* test, it is clear that the victim's in-court identification was not tainted by the prior identification at the defendant's residence. She had seen the defendant in the neighborhood on numerous occasions prior to the rape. She knew where the defendant lived. She explained in detail how she was able to closely observe the defendant during the commission of the crime. The description she gave the police fit the defendant. Moreover, her description of the defendant was consistent throughout the trial and the various proceedings leading up to trial.

We hold, therefore, that the victim's in-court identification was admissible in that it had an independent basis and was not tainted by the prior identification at the defendant's home.

Affirmed.

All concurred.

### *APPENDIX*

*Jury Instruction:*
"On the other hand, defendant claims an alibi. He does not admit that there was a rape but he has not contested it. He doesn't claim that a rape didn't take place, but he claims in his defense that he was not the one who did it and that there has been a wrong identification. That he was home with his family during this period of time. If he was home with his family during that period of time, he couldn't be at 616 Bates Street and therefore he is not guilty of the offense charged.

\* \* \*

"I must give you one other definition. In this case, the defense is what we refer to as an alibi defense. Defense with an alibi, which means just simply a person cannot be two places at the same time, which means if a man is home at 634 Bates Street, he can't be at 616 Bates Street at the same time, that is an alibi.

"Now, an alibi defense may under certain circumstances be a good defense. But in considering this defense, it is necessary for you to take into consideration all of the facts. It is your duty to examine this testimony very carefully. The evidence on this point must be very carefully scrutinized by the jury, because an alibi is easy to prove and it's very difficult to disprove. And that is why it must be examined very carefully by the jury, the evidence regarding the alibi. And so you must be very careful and cautious in examining the evidence bearing upon the question of alibi.

\* \* \*

"So, if you find from the evidence in this case that she was raped, that she was under 16 years of age, and that it was done by the defendant, it would be your duty to find the defendant guilty as charged.

"On the other hand, if you are convinced that he was at home and that he couldn't be at 616 because he was at home with his family at that period of time, you believe the alibi; it would be equally your duty to find the defendant not guilty.

"So, take this case and analyze all the evidence, determine what the facts are and if you find that the prosecution has proved by evidence beyond a reasonable doubt that Mr. Spaulding was the man, then it would be your duty to find him guilty as charged.

"If you find they haven't proved that to your satisfaction beyond a reasonable doubt, and you believe the alibi, it would be equally your duty to find the respondent not guilty."

\* \* \*

"*The Court:* Mr. McGarry, do you have any corrections?

"*Mr. McGarry:* I just have one comment, your Honor,

and I think this may have been cleared up. You said at one point, if you are convinced from the evidence you find Mr. Spaulding was home, you find him not guilty, I think you may have corrected that later when you said, if they had reasonable doubts. I prefer to have reasonable doubts as to his being there." (Mr. McGarry is defense counsel.)