PEOPLE v McSHAN

PEOPLE v TAYLOR

1. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—STATUTES.

> The requirements of the statute providing for the commitment of a defendant to a diagnostic facility certified for the performance of forensic psychiatric evaluation to determine competency to stand trial are mandatory and failure to comply with them is clear error (MCLA 767.27a).

2. CRIMINAL LAW—COMPETENCE TO STAND TRIAL—STATUTES.

> Ordering a defendant to stand trial in the absence of both a diagnostic report and a judicial competency hearing was error where the trial court had earlier ordered the defendant committed to the center for forensic psychiatry for examination and diagnosis (MCLA 767.27a).

3. CRIMINAL LAW—INSTRUCTIONS TO JURY—PRESERVING QUESTION.

> The giving of allegedly erroneous instructions to a jury in a criminal case does not warrant reversal absent a showing of manifest injustice where defense counsel did not object to the instructions at trial.

4. CRIMINAL LAW—DEFENSES—ALIBI—INSTRUCTIONS TO JURY.

> An instruction to a jury concerning the defense of alibi must clearly explain that this defense offers two avenues of relief for a defendant: first, if the alibi is established, a perfect defense has been shown and the defendant should be acquitted and, second, the instruction must clearly indicate that if any reasonable doubt exists as to the presence of the defendant at the scene of the crime, the defendant should be acquitted.

5. CRIMINAL LAW—DEFENSES—ALIBI—INSTRUCTIONS TO JURY—BURDEN OF PROOF—MANIFEST INJUSTICE.

> Failure of a trial court to instruct a jury with respect to the

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 21 Am Jur 2d, Criminal Law § 62 *et seq.*
[3] 53 Am Jur, Trial §§ 135, 136, 824.
[4, 5] 53 Am Jur, Trial § 658.

burden of proof concerning the defense of alibi constitutes manifest injustice and is reversible error despite the failure of defense counsel to object to the instructions at trial.

Appeal from Calhoun, Creighton R. Coleman, J. Submitted Division 3 March 5, 1974, at Lansing. (Docket Nos. 15886, 16116.) Decided May 29, 1974.

Felix McShan, Jr., and Wallace Taylor were convicted of armed robbery. Defendants appeal. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Stanley Everett,* Prosecuting Attorney, for the people.

*Judith K. Munger,* Assistant State Appellate Defender, for defendant.

Before: McGREGOR, P. J., and R. B. BURNS and R. L. SMITH,* JJ.

McGREGOR, P. J. Defendant McShan was found guilty by a jury of aiding and abetting an armed robbery. MCLA 750.529; MSA 28.797 and MCLA 767.39; MSA 28.979. Defendant Taylor was found guilty of armed robbery. MCLA 750.529; MSA 28.797. McShan received a sentence of 3-1/2 to 15 years in prison; Taylor received 10 to 30 years.

On November 25, 1971, at about 10 p.m., two black males visited the home of Millard and Winifred VanDerVoort. Mr. VanDerVoort answered a ringing of the door chimes and, when he unlatched the storm door, it was jerked from his hand by one of the two men. One of the men began beating Mr. VanDerVoort while the other held a gun. The men

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

demanded the VanDerVoorts' money and took the VanDerVoorts' wallets and a purse. After beating Mr. VanDerVoort, the men tore the phone off the wall and left the house.

At about the same time, two police officers on routine patrol discovered Felix McShan's Buick automobile parked near the scene of the crime; as the policemen approached the car, defendant McShan sat up in the front seat and told the officers that he was working on his tape player. McShan was asked to produce his driver's license, which he did. As one officer dealt with McShan, two black males came running towards the parked vehicles. The police vehicle was marked although its flashing lights were not in motion at the time. According to the officers, the two men ran towards them until they were perhaps 20 to 25 feet away, and then made a "U-turn" and ran into a wooded area. One of the officers chased the two men and fired three warning shots, but was unable to catch them at that time. The officers then received, over their radio, notice of the VanDerVoort robbery, whereupon McShan was arrested. A short while later the officers found a handgun about 15 feet from the point where the two fleeing men had entered the wooded area.

McShan testified at trial that he had, on the day in question, installed a tape player in his automobile, that as he was driving on Parkway Drive he struck some bumps which caused a wire to become loose in the tape player, and that he had parked on the street, near a streetlight, to fix the tape player. In fact, music was being played in defendant's car when the officers approached him. McShan said that he saw the two men running in his direction, heard the officer yell "halt", and saw the men run into the wooded area; he also said that he

saw that one of the men was carrying a small handgun.

On December 8, 1971, defendant Taylor and three persons were arrested in a home in Battle Creek on a charge of receiving and concealing stolen property. However, on October 30, 1972, a nolle prosequi was entered in that case. In any event, a holster was found in an upstairs bedroom; no one was present in the room when the holster was found, and defendant Taylor was arrested in a downstairs room. The arresting officer never saw defendant upstairs; the officers had proceeded to the address to execute an arrest warrant for Claude Winford, who was seen climbing out of the window and was apprehended. The home was owned by a third party and was supposedly vacant at this time. Defendant Taylor told the police officers that he lived in the home with the owner's son; however, it was later discovered that he did not reside there.

The gun was offered as an exhibit without objection. However, defense counsel did object to the admission of the holster as an exhibit. The trial court stated that it could not interrupt trial and hold a hearing as to the admissibility of the holster. The prosecutor argued that a motion to suppress that evidence should have been made before trial, and the trial court denied defendant's motion to exclude the holster.

The VanDerVoorts described their assailants as two young black males, one of whom was wearing gloves. They were unable to identify defendant Taylor in a lineup but they did identify him in court as the person who had assaulted Mr. VanDerVoort.

Defendant Taylor's defense was one of alibi. He claimed that on November 25, 1971, Thanksgiving

Day, he was home having dinner with his family; then, after dinner, he watched television, listened to records, and went to bed. He said that he had not participated in the robbery, that he had remained at home throughout the evening of November 25, 1971, that he had maintained a mustache and goatee since 1968, and that he was not clean-shaven on Thanksgiving Day. Millard Van-DerVoort had described his assailants as clean-shaven. Taylor's mother, sister, and two brothers testified as to defendant's presence at the Thanksgiving Day celebration in their home. There were, however, some discrepancies in their testimony, especially when his sister indicated that defendant was in his bedroom, fully dressed, contrary to his brother Raymond's testimony that defendant was undressed and under the bedcovers on the night in question.

McShan testified that he had parked his car on Parkway Drive to fix his tape player; an auto mechanic testified that some time in December, 1971, he had to repair the wiring in defendant's car, stating that it was badly tangled underneath the dashboard. McShan testified that he had known both Taylor and Winford for some time, and Taylor's jacket was found in McShan's car at the time of his arrest. McShan testified that he saw Winford on the night in question at approximately 9:30 p.m.

Defense counsel objected at trial to the consolidation of the two cases, indicating that he had done so at the preliminary examination. The trial judge ruled to continue the previous order which consolidated the cases, denying the motion. The court told the jury that there was a difference in the charges which the defendants faced, and stated the charges made against each defendant and the

prosecution's claims against each defendant. Concerning Taylor's defense of alibi, the court instructed the jury:

"However, in the consideration of this class of defenses, it is necessary for you to take into consideration the fact that alibi is a defense that is easily proven and hard to disprove, therefore, you will be careful and cautious in examining the evidence bearing upon the question of alibi."

The Court's instructions concerning aiding and abetting were, in part:

"Under the provisions of this statute, any defendant is equally guilty with the other, or others, as the case may be, as a principal, if you find that the People have proved beyond a reasonable doubt that any of the said defendants procured, counseled, aided or abetted the other alleged participant, or participants, as the case may be, in the commission of the crime charged, whether the said defendant was present at the actual scene of the offense or not. If a defendant advises, or counsels, or aids or abets the commission of a criminal offense, he is liable as a principal with the principal who commits the crime, even though he did not directly commit the act constituting the offense and was not present when it was committed."

The Court instructed the jury that four possible verdicts were involved with respect to both defendants: guilty of armed robbery, guilty of assault with intent to rob while being armed, felonious assault, and not guilty. Defense counsel stated no objection to these instructions. After deliberating more than six hours, the jury returned a verdict of guilty on the armed robbery count in both cases.

Before trial, McShan's counsel made a motion requesting defendant to be sent to the Center for Forensic Psychiatry so that he could be examined

and diagnosed as to his competence to stand trial. That motion was granted on February 25, 1972. On appeal, defense counsel has argued that the provisions of MCLA 767.27a(3); MSA 28.966(11)(3) and MCLA 767.27a(4); MSA 28.966(11)(4) were not followed, because defendant was examined at the University of Michigan hospital and the trial court had never received any diagnostic reports concerning defendant's competency. In addition, no formal judicial hearing was held to determine defendant's competency to stand trial.

The dispositive issue before this Court with respect to defendant McShan is whether the trial court erred in ordering him to stand trial where (1) the defendant had not been examined at a diagnostic facility certified by the Department of Mental Health; (2) no psychiatric report was forwarded to the trial court with respect to defendant's mental condition or competency to stand trial; and (3) no judicial hearing was held to determine defendant's competency to stand trial.

MCLA 767.27a; MSA 28.966(11) provides in pertinent part:

"(3) Upon a showing that the defendant may be incompetent to stand trial, the court shall commit the defendant in the criminal case to the custody of the center for forensic psychiatry or to any other diagnostic facility certified by the department of mental health for the performance of forensic psychiatric evaluation. The commitment shall be for a period not to exceed 60 days. Within that period the center or other facility shall prepare a diagnostic report and recommendations which are to be transmitted to the committing court.

"(4) Upon receipt of the diagnostic report and recommendations the sheriff shall immediately return the defendant to the committing court and the court shall immediately hear and determine the issue of competence to stand trial. The diagnostic report and recommendations shall be admissible as evidence in the hear-

ing, but not for any other purpose in the pending criminal proceedings."

Similar procedural requirements are embodied in GCR 1963, 786.

The lower court record and briefs submitted in this case indicate that, although the trial court issued an order on February 25, 1972, committing defendant McShan to the Center for Forensic Psychiatry for examination and diagnosis, he was never examined at any facility certified by the Department of Mental Health. The prosecutor states that the defendant was free on bond and "(i)t was the decision of the defendant, his counsel, and his family that he go to a private hospital for diagnosis and possible treatment". For whatever reason, it is clear that defendant was not examined at a certified facility; that no diagnostic report was forwarded to the trial court; and that no judicial hearing was held to determine whether the defendant was competent to stand trial.

This Court has repeatedly held that the requirements of the above-quoted statute are mandatory and failure to comply therewith is clear error. See, e.g., People v Jackson, 40 Mich App 237; 198 NW2d 714 (1972) (defendant examined at Recorder's Court psychiatric clinic rather than certified facility); People v Chase, 38 Mich App 417; 196 NW2d 824 (1972) (failure to hold competency hearing after return from certified facility).

Although we would be hesitant to reverse defendant's conviction merely on the basis that he unilaterally decided to be examined at a noncertified facility in contravention of the trial court's wholly proper order, we cannot overlook the fact that the trial court ordered defendant to stand trial in the absence of both a diagnostic report and a judicial competency hearing. It goes without

saying that both the report and hearing are essential to any assessment of the defendant's competency. In light of their absence here, we are constrained to hold that the lower court erred in ordering defendant McShan to stand trial.

Because a proper examination and diagnosis of defendant's mental condition was never conducted in this case, we refrain from ordering a *nunc pro tunc* competency hearing as suggested in *People v Lucas,* 47 Mich App 385; 209 NW2d 436 (1973). Accordingly we reverse defendant McShan's conviction and remand for a new trial.

Defendant Taylor raises a single meritorious issue on appeal, namely, whether the trial court failed to properly instruct the jury with respect to defendant Taylor's defense of alibi.

Preliminarily we note that the defense counsel at trial did not object to the instructions in question and in fact expressed satisfaction with them. Thus, the giving of the allegedly erroneous instructions does not warrant reversal absent a showing of manifest injustice. *People v Spaulding,* 42 Mich App 492; 202 NW2d 450 (1972).

The trial court instructed the jury as follows:

"Now, a defense presented in this case by Wallace Taylor has been that called 'alibi'. This defense is a legitimate one. If it is true that defendant, Wallace Taylor, was at another place at the time of the commission of the crime charged so that he could not have committed the crime, that would be a complete defense. However, in the consideration of this class of defenses, it is necessary for you to take into consideration the fact that alibi is a defense that is easily proven and hard to disprove, therefore, you will be careful and cautious in examining the evidence bearing upon the question of alibi."

In *People v Erb,* 48 Mich App 622; 211 NW2d 51

(1973), this Court considered an instruction with respect to the defense of alibi very similar in all but one vital aspect to that given by the trial court in this case. The instruction in the *Erb* case contained the following sentence:

"You should consider all the evidence bearing on that point and carefully examine it, and if, in view of the evidence, you have any reasonable doubt as to whether the defendant was at some other place at the time the crime was committed, you should give him, the defendant, the benefit of any doubt and find him not guilty."

In the *Erb* case we discussed both the instruction and the alibi defense at some length. In light of the factual similarities between *Erb* and the present case we quote at length from our decision in the former:

"The use of the words by the trial judge 'if proven' was unfortunate, in that the jury could erroneously receive the impression that the defendant had the burden of proof. It is clear that, once the alibi is properly noticed and evidence produced to establish it, the court has an affirmative duty to give an adequate instruction explaining the defense. Failure to so properly instruct on the defense of alibi requires reversal. *People v Nawrocki,* 8 Mich App 225, 227; 154 NW2d 45, 46 (1967).

"If the alibi defense is accepted by the jury, a defendant cannot be convicted. This does not mean, however, that the burden of proving the defense is upon the defendant; to the contrary, it is the duty of the prosecution to show beyond a reasonable doubt that the defendant did commit the crime and that, therefore, the defendant was at the scene of the crime at the time it was committed. *Sullivan v People,* 31 Mich 1 (1875); *People v Owens,* 3 Mich App 707, 712; 143 NW2d 574, 576–577 (1966).

"An instruction to the jury concerning the defense of alibi must clearly explain that this defense offers two

avenues of relief for the defendant. First, if the alibi is established, a perfect defense has been shown and the defendant should accordingly be acquitted. Alternatively and, perhaps, more importantly, the instruction must clearly indicate that if any reasonable doubt exists as to the presence of the defendant at the scene of the crime then, also, the defendant should be acquitted. *People v Virgil Brown,* 15 Mich App 600, 605–606; 167 NW2d 107, 110 (1969); *People v Loudenslager,* 327 Mich 718, 726; 42 NW2d 834, 837 (1950).

\* \* \*

"It is clear that the instruction given by the trial court adequately advised the jury that, should any reasonable doubt exist as to the presence of the defendant at the scene of the crime, he should be acquitted. This announcement by the court adequately protects the rights of the defendant to be proven guilty only after all reasonable doubts have been eliminated from the minds of the jury. Similarly, it has been held that there is no harm in mentioning that the defense is 'difficult to disprove'. 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 658, p 844, note 17.

"Viewed in their totality, as instructions must be on review, it appears that the instructions given in the instant case did not erroneously inform the jury, nor was the burden of proof shifted to the defendant. *People v Stephen,* 31 Mich App 604; 188 NW2d 105 (1971)."

The obvious and vital distinction between the instruction upheld by this Court in *Erb* and the instruction presently under consideration is the line above quoted referring to the necessity of acquittal if the jury has "any reasonable doubt as to whether the defendant was at some other place at the time the crime was committed". In *Erb* this language was the foundation for our conclusion that the instructions were not erroneous. Contrariwise, in this case the absence of this directive regarding the burden of proof with respect to the defense of alibi is fatal. We are constrained to hold that the failure of the trial court to instruct the

jury with respect to the burden of proof concerning the defense of alibi constitutes manifest injustice and thus reversible error.

Convictions reversed and both defendants remanded for a new trial.

All concurred.