PEOPLE v ROBERT HALL

1. Criminal Law—Evidence—Prosecutor's Remarks—Reasonable
   Inferences—Closing Argument.

   A prosecutor is entitled to comment on the evidence and draw
   reasonable inferences therefrom and he is free in final argu-
   ment to relate the facts to his theory of the case.

2. Criminal Law—Instructions to Jury—Defendant Testifying—
   Statutes.

   A *sua sponte* instruction to the jury to disregard a defendant's
   failure to testify was not an improper comment or reference by
   the judge on the defendant's failure to testify in his own behalf
   in violation of statute, because the policy behind the statute is
   that neglect to testify shall not create any presumption against
   the defendant, and to instruct the jury to that effect in the
   absence of request to do so represents commendable concern for
   the rights of the defendant and should in no way work against
   his interests (MCLA 600.2159).

3. Criminal Law—Instructions to Jury—Preserving Question.

   An allegedly erroneous instruction to the jury does not warrant

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial §§ 485, 486.

[2] 53 Am Jur, Trial §§ 506, 821, 822.

[3, 7, 10] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

[4, 5] 53 Am Jur, Trial § 539 *et seq.*

[5] 40 Am Jur 2d, Homicide §§ 439, 501, 529, 534.

[6] 40 Am Jur 2d, Homicide §§ 498, 525 *et seq.*

[8, 9] 21 Am Jur 2d, Criminal Law §§ 303, 324, 337, 584, 585.
   Defendant's right to disclosure of presentence report. 40 ALR3d
   681.

[8, 9] Court's right, in imposing sentence, to hear evidence of, or to
   consider, other offenses committed by defendant. 96 ALR2d 768.

[10] 63 Am Jur 2d, Prosecuting Attorneys § 27.

[11] 29 Am Jur 2d, Evidence § 436.
   Admissibility of sound recordings in evidence. 58 ALR2d 1024.

[12] 41 Am Jur 2d, Indictments and Informations §§ 55, 56, 60.

[13] 21 Am Jur 2d, Criminal Law §§ 220 *et seq.,* 333 *et seq.*

reversal absent a showing of manifest injustice where defense counsel did not object to the instruction and expressed satisfaction with it.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—MANIFEST INJUSTICE.

Instructions to the jury should be read in their entirety to determine whether any manifest injustice occurred to a criminal defendant.

5. HOMICIDE—SECOND-DEGREE MURDER—INSTRUCTIONS TO JURY—PREJUDICE—MANIFEST INJUSTICE.

Instructions on the elements of the charged offense of second-degree murder which referred to first-degree murder in precluding the jury from considering the element of premeditation were not reversible error, and there was no prejudice to defendant, or manifest injustice, where these references were contained in only 2 paragraphs of the entire 25-page charge to the jury and a close consideration of the instructions read as a whole fails to disclose error or prejudice.

6. CRIMINAL LAW—INSTRUCTIONS TO JURY—INCLUDED OFFENSES—COERCION.

Instructions to the jury on lesser included offenses were not coercive and did not unduly restrict the jury in their right to find a defendant guilty of a lesser included offense where there was no requirement of unanimous agreement on defendant's innocence of the greater charge before the jury's discussion of the lesser charges was permitted.

7. CRIMINAL LAW—APPEAL AND ERROR—SENTENCING—PRIOR CONVICTIONS—PRESERVING QUESTION.

The Court of Appeals will not consider a defendant's claim that the trial court considered prior constitutionally infirm convictions contained in his presentence report, where defendant has not given the sentencing court the initial opportunity to resolve the claim.

8. CRIMINAL LAW—SENTENCING—PRESENTENCE REPORT—PRIOR ARRESTS—EVIDENCE.

A trial court properly considered a defendant's presentence report that contained arrests which did not result in convictions where defendant presents no evidence that the court relied in any way on these arrests in determining the sentence defendant was to receive, nor does he challenge the arrests as being listed inaccurately.

9. CRIMINAL LAW—SENTENCING—PRESENTENCE REPORT—INSINUA-
   TIONS.

   Reference to an incident to which a defendant was connected
   merely by insinuation was properly included in his presentence
   report; where it is not challenged as inaccurate, the trial court
   is presumed to attach the proper weight to the reference to
   such an incident.

10. CRIMINAL LAW—APPEAL AND ERROR—PROSECUTOR'S REMARKS—
    PRESERVING QUESTION.

    A defendant's failure to object at trial to questions asked a
    witness by the prosecutor or to any of the remarks made by the
    prosecutor precludes consideration of the issue on appeal.

11. CRIMINAL LAW—EVIDENCE—TAPE-RECORDED STATEMENT—ADMISSI-
    BILITY—CONSISTENT TESTIMONY—CUMULATIVE EVIDENCE—SUB-
    STANTIVE EVIDENCE.

    A trial court's admission in evidence as "past recollection re-
    corded" of a tape-recorded statement given to the police by a
    prosecution witness was merely cumulative, was harmless be-
    yond a reasonable doubt, and effected no miscarriage of justice,
    where only that part of the tape was admitted which dealt with
    the defendant's demand for a knife, and the witness had
    already testified to this identical statement by defendant, and
    by admitting that the preliminary examination testimony was
    correct, the witness adopted the testimony; it became substan-
    tive evidence.

12. CRIMINAL LAW—WITNESSES—RES GESTAE WITNESSES—INDORSE-
    MENT—PRESERVING QUESTION.

    A defendant's failure to move for the indorsement and production
    in the trial court of several res gestae witnesses where the
    identity of these witnesses was made known to defendant
    before trial precludes his claim on appeal that the prosecutor
    improperly failed to indorse or produce the witnesses.

13. CRIMINAL LAW—WITNESSES—RES GESTAE WITNESSES—CONSTITU-
    TIONAL LAW—RIGHT TO REMAIN SILENT—RIGHT TO CONFRONTA-
    TION—CODEFENDANTS—COCONSPIRATORS—ACCOMPLICES.

    A trial court properly allowed a res gestae witness to invoke the
    Fifth Amendment and remain silent and the defendant was not
    denied his right to confrontation where the witness refused to
    answer questions put to him by the prosecutor and defendant's
    counsel did not object to these refusals to answer and had
    recommended to the witness that he plead the Fifth Amend-
    ment, where defense counsel used the witness's invocation of

the Fifth Amendment in closing argument to discredit the witness's testimony, where the witness did answer all questions put to him by the defendant's counsel, where there is no evidence that the witness was either a codefendant, coconspirator, or accomplice of defendant, where the witness was not charged with any offense arising from the matter, and where no waiver of the witness's right to remain silent appears on the record.

Appeal from Berrien, William S. White, J. Submitted Division 3 June 6, 1974, at Grand Rapids. (Docket No. 17306.) Decided October 8, 1974.

Robert W. Hall was convicted of second-degree murder. Defendant appeals. Affirmed, without prejudice to a further motion.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *John Jeffrey Long,* Assistant Prosecuting Attorney, for the people.

*Dennis H. Benson,* Assistant State Appellate Defender, for defendant.

Before: HOLBROOK, P. J., and T. M. BURNS and R. L. SMITH,* JJ.

T. M. BURNS, J. Defendant Robert W. Hall was convicted by a jury on January 9, 1973, of second-degree murder. MCLA 750.317; MSA 28.549. He was sentenced on February 13, 1973, to a prison term of from 30 to 50 years, with appropriate credit for time already spent in jail. Defendant now appeals his conviction and sentence as of right.

On the night of May 20–21, 1972, three young men from Michigan City, Indiana, Kenneth Beh-

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

rendt, Claude Novak, and the victim, John Blank, drove to Casey's Pub in New Buffalo, Michigan. At the pub, these men talked to some friends for a short period of time and then talked to some girls. A short time later the defendant approached the three men and began staring at them, especially at John Blank. Defendant threatened Blank, but Blank attempted to ignore him. When the three men left, with John Blank in the lead, defendant followed taking a beer bottle with him. Defendant broke the beer bottle outside the pub and poked it at Blank when Blank was getting into his car. Blank apparently disarmed the defendant in some manner and chased him down the street.

As Blank was returning to his car after the chase, a group of young men led by the defendant attacked him and the other two Indiana men. After the fight which ensued, Blank, who had suffered chest and neck wounds, was taken to a state police post for aid by his two friends. He was subsequently transported to a hospital where he died a short time later.

The doctor who performed the autopsy on Blank testified at trial that the death was caused by a stab wound through the heart and that the wound was one of two in the chest area which could have been caused only by a knife, letter opener, or similar instrument at least two inches in length.

The primary question presented to the jury was whether or not the defendant killed John Blank. A customer at the pub testified that she went outside with a number of other people to see the fight, but that it had already broken up when she got there. However, she stated that she saw defendant holding an instrument resembling a knife in his hand while she was standing outside the bar.

Another witness testified that defendant had run

up to a house near the pub at which she and others, including defendant, had been attending a party, and asked for a knife. A knife used by the witness to open beer bottles could not be found later. Other pertinent facts will be presented in our discussion of the several issues raised by defendant.

Defendant first contends that the prosecutor, during closing argument, improperly referred to the defendant's failure to testify. No objection to the complained-of statements was raised at trial and no curative instruction was requested. Therefore, this issue is not properly before us. *People v McLendon,* 51 Mich App 543; 215 NW2d 742 (1974); *People v Pacely,* 51 Mich App 67, 71; 214 NW2d 561 (1974).

Second, defendant argues that the prosecutor improperly commented on the credibility of various witnesses. We consider this Court's statement in *People v Duke,* 50 Mich App 714, 717; 213 NW2d 769 (1973), to be dispositive of this issue:

"A prosecutor is entitled to comment on the evidence and draw reasonable inferences therefrom. He is free in final argument to relate the facts to his theory of the case. In this case, the prosecutor attempted to establish a permissible relationship between his theory and the facts in evidence. Defendant made no objection at the time the allegedly offensive statements were made. There was no request for curative or corrective instructions. Hence the error, if any, was waived." See *People v Pacely, supra.*

Third, defendant claims that the trial court committed reversible error by *sua sponte* instructing the jury to disregard defendant's failure to testify. We decline to accept the authorities cited by defendant as controlling precedent, but rather feel that the following statement from our recent

decision in *People v Andrews #1,* 52 Mich App 719, 725–726; 218 NW2d 379, 382 (1974), controls this issue:

"The essence of the defendant's argument is that such *sua sponte* instructions amount to a comment or reference by the trial judge on the defendant's failure to testify in his own behalf in violation of MCLA 600.2159; MSA 27A.2159. The appellate defender makes a cogent argument for that position. The policy behind the statute is that 'neglect to testify shall not create any presumption against [the defendant]'. To instruct the jury to that effect in the absence of request to do so represents commendable concern for the rights of the defendant and should in no way work against his interests. *People v Waters,* 16 Mich App 33, 36–37; 167 NW2d 487 (1969). There is no merit to this contention of the defendant. *People v Harris,* 52 Mich App 739; 218 NW2d 150 (1974)."

Fourth, the defendant contends that the trial court improperly instructed the jury on an offense higher than that charged, namely first-degree murder. In charging the jury on the elements of the charged offense of second-degree murder, the trial court referred to first-degree murder in precluding the jury from considering the element of premeditation. These references to premeditation and the higher offense of first-degree murder were contained in only 2 paragraphs of the trial court's entire 25-page charge to the jury.

We note at the outset that defense counsel did not object to the instruction in question and in fact expressed satisfaction with it. Therefore, the giving of this allegedly erroneous instruction does not warrant reversal absent a showing of manifest injustice. *People v McShan,* 53 Mich App 407; 219 NW2d 792 (1974); *People v Spaulding,* 42 Mich App 492; 202 NW2d 450 (1972).

Jury instructions should be read in their en-

tirety to determine whether any manifest injustice occurred. *People v Elkins,* 39 Mich App 603; 198 NW2d 31 (1972). A close consideration of the instruction read as a whole fails to disclose any reversible error or prejudice to defendant, let alone manifest injustice. Therefore, defendant's claim, raised here for the first time on appeal, is meritless.

Fifth, defendant asserts that the trial court's instructions on lesser included offenses were coercive and unduly restricted the jury in their right to find defendant guilty of a lesser included offense. Defendant cites *People v Ray,* 43 Mich App 45; 204 NW2d 38 (1972), in support of his position.

After reading them in their entirety, we are convinced that these instructions on lesser included offenses do not sustain defendant's contention. As opposed to the circumstances presented in *Ray,* here there was no "requirement of unanimous agreement on defendant's innocence of the greater charge before discussion of the lesser charges [was] permitted". 43 Mich App 45, 50. See also *People v James,* 51 Mich App 777, 216 NW2d 473 (1974).

Sixth, defendant maintains that the trial court imposed sentence on the basis of erroneous facts contained in the presentence report. At sentencing, the trial court noted that it had read the presentence report and talked with various probation officers and defendant's attorney.

Defendant first argues that the trial court considered prior constitutionally infirm convictions contained in the presentence report. We refrain from considering this claim since defendant has not complied with the procedures set forth in *People v Moore,* 391 Mich 426, 440–441; 216 NW2d 770 (1974), *i.e.,* defendant has not given the sen-

tencing court the initial opportunity to resolve this claim.

Defendant next contends that it was error for the trial court to consider this presentence report since it contained arrests which did not result in convictions.

Defendant presents no evidence that the trial court relied in any way on these arrests in determining the sentence defendant was to receive, nor does he challenge the arrests as being listed inaccurately. We, therefore, conclude that there was no error committed requiring resentencing and that defendant has suffered no prejudice. *People v Pettis,* 49 Mich App 503; 212 NW2d 266 (1973); *People v Martin,* 48 Mich App 437; 210 NW2d 461 (1973); *People v Lotze,* 47 Mich App 460; 209 NW2d 497 (1973).

Defendant's claim that reference to an incident to which defendant was connected merely by insinuation was improperly included in the presentence report is likewise without merit. It is not challenged as inaccurate, and furthermore the trial court is presumed to attach the proper weight to the reference to such an incident. *People v Martin, supra; People v Hildabridle,* 45 Mich App 93; 206 NW2d 216 (1973).

Seventh, defendant contends that the prosecutor improperly threatened and intimidated a witness at trial and that he is, therefore, entitled to a new trial. Defense counsel did not object to any of the questions asked or any of the remarks made by the prosecutor. It is well settled that a claim of appeal, raised for the first time in the appellate court, which was not made in the court below, will not be considered in the appellate court. *People v Harley,* 49 Mich App 729; 212 NW2d 810 (1973); *People v Eroh,* 47 Mich App 669; 209 NW2d 832

(1973); *People v Meier,* 47 Mich App 179; 209 NW2d 311 (1973); *People v Taylor,* 46 Mich App 259; 207 NW2d 899 (1973); *People v Brocato,* 17 Mich App 277; 169 NW2d 483 (1969). Therefore, defendant's failure to object below to the admission of this witness's testimony precludes this Court from consideration thereof in this claim of appeal.

Eighth, defendant claims that the trial court committed reversible error in admitting into evidence as "past recollection recorded" a tape-recorded statement given to the police by a prosecution witness. However, we find it unnecessary to consider this claim at length because we are of the opinion that the error committed, if any, was harmless beyond a reasonable doubt, did not contribute to defendant's conviction, and thus does not mandate reversal of that conviction. See *People v Hutton,* 50 Mich App 351, 364; 213 NW2d 320 (1973).

Only that part of the tape was admitted which dealt with the defendant's demand for a knife. The witness had already testified to this identical statement by defendant, and by admitting that her preliminary examination testimony was correct, the witness adopted said testimony and it became substantive evidence. *People v Couch,* 49 Mich App 69; 211 NW2d 250 (1973). Thus the tape-recorded statement was merely cumulative and in our opinion, its admission into evidence if error at all, was harmless beyond a reasonable doubt. There was no miscarriage of justice. See *People v Musser,* 53 Mich App 683; 219 NW2d 781 (1974).

Ninth, defendant argues that the prosecutor improperly failed to indorse or produce several res gestae witnesses. The identity of these witnesses who were not produced at trial was made known

to the defendant before the trial. Defense counsel's failure to move for their indorsement and production below precludes an assertion of error on appeal. *People v Bennett,* 46 Mich App 598; 208 NW2d 624 (1973); *People v Cowell,* 44 Mich App 623; 205 NW2d 600 (1973); *People v Williams,* 42 Mich App 278; 201 NW2d 286 (1972); *People v Fuston Thomas,* 36 Mich App 23; 193 NW2d 189 (1971). The recent opinion of our Supreme Court in *People v Robinson,* 390 Mich 629; 213 NW2d 106 (1973), has no application here, since that opinion by its express terms is prospective and limited to appeals filed after its date of publication (January 28, 1974). See Judge O'HARA's dissent in *People v Koehler,* 54 Mich App 624; 221 NW2d 398 (1974).

Finally, defendant contends that it was error for the trial court to allow a res gestae witness to invoke the Fifth Amendment and remain silent. Defendant's position is that he was denied his right of confrontation when his friend, Bobby Johnson, refused to answer questions, instead pleading the Fifth Amendment.

Bobby Johnson was with defendant when the original altercation occurred in the bar and joined the "rumble" by fighting either Behrendt or Novak. He also testified that he observed defendant and the victim fighting under the fender of an automobile. On three separate occasions, he refused to answer questions put to him by the prosecutor. Defendant's counsel did not object to these refusals by Johnson. In fact, Johnson stated that the defendant's attorney had recommended that he plead the Fifth Amendment.

Of more significance is the fact that the witness did answer all questions put to him by the defendant's attorney. Finally, there is no evidence in the record that the witness was either a codefendant, coconspirator or accomplice of defendant. More-

over, it does not even appear that he had been charged with any offense arising from the fight.

Defendant's reliance on *People v Mobley,* 390 Mich 57; 210 NW2d 327 (1973), is misplaced. In *Mobley,* our Supreme Court held that on cross-examination an accomplice cannot invoke the privilege against self-incrimination about his involvement in the crime where on direct examination he has given testimony incriminating the defendant in a common criminal enterprise. That principle is distinguishable from the case at bar for numerous reasons. First, Johnson was not an accomplice to the murder, nor had he been charged with any crime stemming from the fight. Second, Johnson did not invoke the privilege against self-incrimination in response to cross-examination concerning his involvement in the same criminal activity for which defendant was tried and convicted, but rather invoked the privilege on direct examination in response to questions posed by the prosecutor. Finally, not only did Johnson answer all questions asked by defendant's attorney, but defense counsel did not object to Johnson's refusal to answer the prosecutor's questions. In fact, defense counsel used Johnson's invocation of the Fifth Amendment in closing argument to discredit Johnson's testimony.

After consideration of all the aforementioned facts, we are of the opinion that no error was committed since Johnson had the constitutional right to remain silent. No waiver of that right appears on the record. See *People v Sesson,* 45 Mich App 288, 297–298; 206 NW2d 495 (1973).

Affirmed, but without prejudice to defendant to bring an appropriate motion in the trial court as permitted under *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974).

All concurred.