PEOPLE v CAIN

1. CRIMINAL LAW—INSTRUCTIONS TO JURY—MANIFEST INJUSTICE—PRE-
SERVING QUESTION—APPEAL AND ERROR.

   Reversal of a defendant's conviction because of an erroneous jury
   instruction is not warranted absent a showing of manifest
   injustice where no objection to the instruction was made at
   trial.

2. CRIMINAL LAW—DEFENSES—ALIBI—INSTRUCTIONS TO JURY—BUR-
DEN OF PROOF—REASONABLE DOUBT.

   An instruction to the jury on the defense of alibi which included
   a statement that the defense was a proper one "if proven" did
   not place the burden of proving the alibi on the defendant
   where the instruction also clearly indicated that if any reasona-
   ble doubt existed as to the presence of the defendant at the
   scene of the crime he should be acquitted.

3. CRIMINAL LAW—IDENTIFICATION—PHOTOGRAPHIC IDENTIFICATION—
RIGHT TO COUNSEL—PRESENCE OF COUNSEL—CUSTODY.

   The right to counsel for purposes of photo identification attaches
   only when the suspect is in custody; therefore, a trial court
   properly refused to suppress identification evidence obtained
   from a photographic identification of the defendant, at which
   no counsel for defendant was present, which was made by the
   victims of the crime prior to the arrest of the defendant.

4. CRIMINAL LAW—TRIAL—WARNINGS TO COUNSEL—JUDGE'S DISCRE-
TION.

   A cautionary statement by a trial court warning counsel to keep
   away from objectionable arguments so that there would be no
   unnecessary interruptions of the trial does not constitute an
   abuse of discretion where the language used by the court is not

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial § 906.
[2] 21 Am Jur 2d, Criminal Law §§ 136, 137.
   75 Am Jur 2d, Trial § 734.
   Burden and degree of proof as to alibi. 124 ALR 471.
[3] 21 Am Jur 2d, Criminal Law §§ 312 *et seq.,* 368, 369.
[4] 75 Am Jur 2d, Trial §§ 192–194, 230, 231, 271.

unduly restrictive and contains no prohibition on counsel making objections.

Appeal from Saginaw, Joseph R. McDonald, J. Submitted January 7, 1976, at Grand Rapids. (Docket No. 20525.) Decided February 26, 1976. Leave to appeal denied, 397 Mich —.

Joseph K. Cain was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *E. Brady Denton, Jr.,* Prosecuting Attorney, and *Peter C. Jensen,* Assistant Prosecuting Attorney, for the people.

*Irwin F. Hauffe II,* for defendant.

Before: D. E. HOLBROOK, P. J., and R. M. MAHER and D. F. WALSH, JJ.

D. E. HOLBROOK, P. J. Defendant and two others were charged with an armed robbery which occurred on December 5, 1972. MCLA 750.529; MSA 28.797. On July 12, 1973 a hearing was held on defendant's motion to suppress evidence which was discovered in a search of codefendant Jackson's apartment. The court ruled that the search was valid because Jackson had given his consent, and that in any case, only Jackson had standing to attack the validity of the search. All three defendants were found guilty by a jury as charged. Defendant was sentenced to life imprisonment and he appeals as of right.

At trial, the prosecution introduced a great deal of testimony concerning the robbery itself and the apprehension and identification of the perpetrators. The robbery took place at around 2 p.m. on December 5, 1972 in Richerts's Market in Saginaw

County. At that time, Mrs. Richerts, who was working at the liquor counter, noticed some suspicious looking individuals entering the store. She moved over to another counter and activated a buzzer which was intended to notify her husband, who was working in the back room, of the presence of the suspicious looking individuals. She then moved back to the liquor counter to complete a sale that she was making there. Before the sale was completed, one of the individuals approached her, drew a gun and announced a stick-up. Mrs. Richerts screamed for her husband. A shot was fired and Mrs. Richerts slumped to the floor, wounded in the head. Mr. Richerts, who was armed with a concealed .45 caliber handgun, could not come to his wife's aid, however, for he was being held at bay by a second man who wielded a sawed-off shotgun. The Richerts' daughter was also being covered by the individual with the sawed-off shotgun. This individual first demanded and received Mr. Richerts' money. He then produced a bag and ordered Mr. Richerts to begin filling it with handguns which were on display in the store. He threatened to kill the daughter if his demands were not met. Mr. Richerts complied, turning over 13 handguns to the robber. The individual with the sawed-off shotgun was positively identified at trial by both Mr. Richerts and his daughter. Both of them testified it was defendant Cain.

Meanwhile, the third man involved was directing the customer who had been at the liquor counter, a 73-year-old woman, to a cooler in the rear of the store. At one point this woman stumbled and fell, and was viciously kicked by the robber. Eventually, the three robbers forced all of the other people in the store into the cooling compartment. One of the robbers then announced that he would remain on guard for five to ten

minutes in order to let the others escape. Mr. Richerts remained in the cooler only long enough to discover that his wife was in no immediate danger of death. He then instructed the others to get up against one of the walls in the cooler and, drawing his handgun, he went out in pursuit of the robbers. Outside the store, he observed them pulling away in their getaway car. He fired at the car, hitting it several times. He then pursued the getaway car in another vehicle until it was finally abandoned at the apartment complex where defendant was ultimately apprehended. There, the robbers exited the vehicle and eluded Mr. Richerts on foot.

Almost immediately, the police, who had been made aware that Mr. Richerts was in pursuit of the robbers, began arriving at the same apartment complex. Soon there were officers present from several law enforcement agencies. A large field next to the apartment complex was surrounded and searched. Several apartments were searched upon request of their occupants, who feared that the criminals may have somehow gained entrance. Finally, the police received an anonymous phone tip that the robbers were in a certain apartment. Several of the officers proceeded to that apartment and knocked upon the door. Defendant Jackson answered the door and identified himself as the occupant of the apartment. The officers informed him of the robbery and the fact that the robbers were believed to be in the area, and asked if they might come in and have a look around. Defendant Jackson consented to this. Also present in the apartment was defendant Cain. At some point, defendant Jackson withdrew his consent and the officers left the apartment. Because one of the officers had recognized defendant Cain as having been previously involved in illegal activities, word

was sent to police headquarters to obtain pictures of defendants Cain and Jackson and ascertain whether or not they could be identified by the victims of the robbery. From a group containing photographs of approximately 10 men, the victims were able to identify defendants Jackson and Cain. The officers proceeded back to the apartment and placed those two defendants under arrest. A guard was posted outside the apartment to await the obtaining of a search warrant. When the search warrant was obtained, the ensuing search turned up a sawed-off shotgun, later identified as the one used in the robbery. A handgun and a bag containing 13 other handguns which were identified as the ones stolen from Richerts' Market were also seized.

When the prosecution rested its case, defendants Jackson and Gibson decided to enter no evidence. Defendant Cain took the stand in his own behalf and entered an alibi defense. In short, he claimed that at the time of the robbery he was either at school or in a car traveling from school to defendant Jackson's apartment. Other facts will be related where pertinent.

Defendant Cain first argues that reversible error occurred when the trial court gave the following instruction:

"Now the defendant in this case claimed the defense of what we call alibi. This is defendant Cain, and that is in simple English, that he was at another place all the time of the commission of the crime charged, and I instruct you that this sort of defense is a proper one and is as legal, if proven, as any other defense. You should consider all the evidence bearing upon that point and carefully examine it, and if in view of the evidence you have any reasonable doubt as to whether defendant was at some other place at the time the

crime was committed, you should give him, the defendant, the benefit of any doubt and find him not guilty."

We first note that no objection was made to this instruction at trial. Therefore, even if erroneous, the giving of the instruction will not warrant reversal absent a showing of manifest injustice. *People v McShan,* 53 Mich App 407, 415; 219 NW2d 792, 796 (1974), *People v Spaulding,* 42 Mich App 492; 202 NW2d 450 (1972).

We hold that, far from constituting manifest injustice, the instruction given was substantially correct. The inclusion of the words "if proven" did not place the burden of proving an alibi defense on the defendant. In *People v John Johnson,* 58 Mich App 60, 65; 227 NW2d 228, 231 (1975), we quoted from *People v William Johnson,* 54 Mich App 678, 683–684; 221 NW2d 452, 455 (1974):

" ' "An instruction to the jury concerning the defense of alibi must clearly explain that this defense offers two avenues of relief for the defendant. First, if the alibi is established, a perfect defense has been shown and the defendant should accordingly be acquitted. Alternatively and, perhaps, more importantly, the instruction must clearly indicate that if any reasonable doubt exists as to the presence of the defendant at the scene of the crime then, also, the defendant should be acquitted." ' "

It can easily be seen that the instruction as given clearly fulfills the requirements set forth in *People v William Johnson* and indorsed in *People v John Johnson, supra.*

In *People v McCoy,* 392 Mich 231; 220 NW2d 456 (1974), it was held that it would henceforth be error to characterize an alibi defense as "easily proven and hard to disprove" or to suggest to the jury that the defendant has the burden of estab-

lishing the defense. We have several times held that *McCoy* is not retroactive. *People v Davis,* 61 Mich App 220; 232 NW2d 683 (1975), *People v Daniels,* 60 Mich App 458; 231 NW2d 386 (1975), *People v Phelps,* 57 Mich App 300; 225 NW2d 738 (1975). Nevertheless, even if *McCoy* were held to apply to this case, defendant would not prevail since we have held that the instruction as given did not place any burden upon defendant to "establish" his alibi defense. Rather, the court correctly instructed the jury that if they had any reasonable doubt as to whether or not defendant may have been somewhere else at the time of the commission of the offense, then they should find him not guilty.

Defendant also alleges that reversible error was committed when the trial court failed to suppress evidence obtained through a photo identification procedure where no counsel was present.

Defendant argues that he had a right to have an attorney present when the victims of the crime were shown the photographs from which they identified himself and defendant Jackson. He argues that since he did not have counsel the photo identification was illegal. Therefore, he theorizes, the ensuing arrest and search and seizure were also illegal and should have been excluded from trial. Defendant did not make a pretrial motion to suppress based on the argument set forth here; nevertheless we shall proceed to decide the issue. The right to counsel attaches for purposes of photo identification only when the suspect is in custody. *People v Anderson,* 389 Mich 155, 186–187; 205 NW2d 461, 475–476 (1973). Defendant, in this case, was simply not under arrest at the time of the photo identification. The most that can be said is that the apartment he was in was under surveil-

lance. It has been noted that not every actual restraint of a person by the authorities constitutes an arrest. *People v Eugene Harris,* 43 Mich App 531, 539; 204 NW2d 549, 553 (1972). Defendant here does not even allege any physical restraint. In fact, although neither party raises this fact on appeal, the transcript shows that defendant testified that he actually left the apartment during the pertinent period of time. Testifying as to the events which occurred after defendant Jackson withdrew his consent and the officers left the apartment, defendant Cain said:

"*A.* In a way, I didn't really understand what was happening, because after they left, I left.

"*Q. (Mr. Borchard, assistant prosecuting attorney)* You left the apartment?

"*A.* Yes, sir.

"*Q.* All right. Did you ever come back to the apartment?

"*A.* Yes, sir.

"*Q.* Why did you come back?

"*A.* Beg your pardon? Because I went to see was Charles Jones back at home. He wasn't there, so I came right back over to Larry's house.

"*Q.* Why didn't you leave that area, if you were concerned, and the atmosphere was shaky?

"*A.* Well, after I was curious. I know after McDougall left and told us to report down at detective headquarters at 8:30 in the morning, I know I hadn't done nothing, so I could go down and explain my presence and I figured that would be it."

Thus, it appears from defendant's own testimony that he had complete freedom of movement. He was therefore not under arrest or in custody. *People v Bommarito,* 25 Mich App 668; 181 NW2d

613 (1970). He therefore had no right to counsel and the photo identification procedure was valid.

Defendant next alleges that the trial court abused its discretion by prohibiting counsel from objecting during the opening statements and closing arguments.

Defendant grossly exaggerates when he claims that the trial court stated that counsel could not object. The trial court did state:

"I will caution counsel to stick to what they intend to show or what the theory of their case is in their opening statements and not get into argument. I don't want either the opening statement or the final arguments interrupted.

"Also, if counsel are going to make objections, state the reason for the objection. There will be no further statement. The court will rule. If you wish argument, the court will permit argument out of the presence of the jury."

The above statement by the court contains no prohibition on objections. It is merely a warning by the court to keep away from objectionable arguments so that there would be no unnecessary interruptions. The language employed by the court was not unduly restrictive and did not constitute an abuse of discretion. It should be pointed out that if defense counsel truly believed he was precluded from objecting during the argument of the prosecution, he could have objected at the close of the prosecution's final argument. Further, the defendant does not even now point to any error in the argument of the prosecutor, and he certainly shows us no miscarriage of justice.

We have examined defendant's other allegations of error and find them to be totally without merit.

Affirmed.