THE PEOPLE v. JOHN BORGETTO.

*Criminal law—Homicide— Malice—Confessions — Instructions to jury—Insanity—Evidence.*

1. The charge of the court on the questions of "confessions" and "malice," as set forth in the opinion, is held to have been unobjectionable.

2. There is a difference in the nature of the testimony requisite as bases for opinions in the two cases of sanity and insanity. The former is the normal condition; the latter, the abnormal. The latter is based upon unnatural conduct; the former may safely rest upon the absence of unnatural action or language.

3. A witness who is shown to have a sufficient acquaintance with a respondent, under circumstances that give a reasonable opportunity for judging, may testify that he saw nothing unusual or abnormal, or to indicate insanity

4. What is required to show a "sufficient opportunity" depends upon circumstances which may properly move the judicial discretion, and when, taken as a whole, they move the judicial discretion of the trial judge, by apprising him that the witness may believe in the competency of the respondent upon

reasonable grounds, the opinion may be given; citing *O'Connor v. Madison*, 98 Mich. 183, 188.

5. Where a witness has testified on the introduction of the people's case to his acquaintance with the respondent, and to circumstances showing some opportunity to judge as to his mental condition, it is unnecessary to repeat such testimony in connection with the opinion of the witness as to the sanity of the respondent, given on rebuttal of the defense of insanity.

6. An objection that a question calling for the judgment of a witness as to whether the respondent was sane or insane was too narrow, and should have included all of the observations of the witness during the entire period of his acquaintance, is ovetrechnical, when the respondent's counsel did not take the trouble to modify the evidence by cross-examination.

Error to Dickinson. (Stone, J.) Argued February 1 and 2, 1894. Decided March 20, 1894.

Respondent was convicted of murder in the first degree, and sentenced to imprisonment in the State prison for life. Judgment affirmed. The facts are stated in the opinion.

*R. C. Flannigan*, for respondent.

*A. A. Ellis*, Attorney General, and *F. J. Trudell*, Prosecuting Attorney, for the people.

HOOKER, J. The respondent was convicted of murder in the first degree.

Counsel for the respondent assigns error upon the instructions to the jury upon the subject of confessions and malice. Counsel, in his brief, says:

" The court commented on the alleged confession when instructing the jury, saying, 'It is generally agreed that deliberate confessions of guilt are among the most effectual proofs in the law.' The language of the court, above quoted, was argumentative, and therefore erroneous."

We are not cited to the page of the record where this language is found, but think we have not overlooked the

language actually used by the court. This is but a small portion of what the court said upon the subject, and is, in itself, a correct statement of the law, so far as it goes. The judge would hardly have been warranted in stopping with what is quoted above, and in fact did not, but, in careful and well-considered language, pointed the jury to the dangers of false confessions, and the uncertainty of such evidence, as appears from the following quotation:

"It is claimed here by the prosecution that the respondent has confessed the crime charged, or the act which is claimed to have been committed. The court advises you that the confessions of a prisoner are received as evidence of guilt, upon the presumption that a person will not make an untrue statement against his own interest. The evidence of verbal confessions of guilt is to be received with great caution; for, besides the danger of mistake, from the misapprehension of witnesses, the misuse of words, the failure of the party to express his own meaning, and the infirmity of memory, it should be recollected that the mind of the prisoner himself is often oppressed by the calamity of his situation, and that he is often influenced, by motives of hope or fear, to make an untrue confession. Subject to these cautions in receiving and weighing them, it is generally agreed that deliberate confessions of guilt are among the most effectual proofs in the law. Their value depends on the supposition that they are deliberate and voluntary, and are on the presumption that a rational being will not make admissions prejudicial to his interest and safety, unless when urged by the promptings of truth and conscience. The degree of credit to be given to the confessions in this case, or the alleged confessions, is for the jury, under the circumstances of the case, and the manner in which they were made. Look over the testimony, gentlemen, with reference to these confessions. Were they made deliberately, intelligently, and with understanding on the part of the respondent? The weight of them is for the jury."

Again, upon the question of malice, error is assigned upon the following:

"The court erred in charging the jury as follows:

'Malice is here used in a technical sense, including, not only anger, hatred, and revenge, but every other unlawful and unjustifiable motive. It is not confined to particular ill will to the deceased, but is intended to denote an action flowing from a wicked and corrupt motive; a thing done, as the books say, *malo animo.*'"

After defining the different degrees of homicide, the court treated the question of malice as follows:

"Manslaughter is principally distinguished from murder in this: That, though the act which occasions death be unlawful, yet the malice, either express or implied, which is the very essence of murder, is presumed to be wanting, and is wanting, in manslaughter. To constitute murder in either degree, the killing must be committed with malice aforethought. Malice is here used in a technical sense, including, not only anger, hatred, and revenge, but every other unlawful and unjustifiable motive. It is not confined to particular ill will to the deceased, but is intended to denote an action flowing from a wicked and corrupt motive; a thing done, as the books say, *malo animo;* where the fact has been attended with such circumstances as carry in them the plain indication of a heart regardless of social duty, and fatally bent upon mischief. And therefore malice is implied from any deliberate or cruel act against another, however sudden. The time within which the wicked purpose is formed is immaterial. Malice aforethought does not imply deliberation, or the lapse of considerable time between the formation and execution of the intent to take life, but rather denotes purpose and design. It means malice existing at any time before the act, so as to be its moving cause or concomitant. In considering this subject, you should carefully weigh the evidence bearing on the act charged, and all of the surrounding circumstances, the means or instrument used, if any were used, and all facts throwing light upon the nature of the act charged to have been committed.

"In this connection, I give the second, third, fourth, fifth, and sixth of the respondent's requests:

"'If a homicide is committed under the influence of passion, or in the heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool, and reason to resume its habitual control, and is the result of the temporary excite-

ment by which the control of reason was disturbed, the offense is manslaughter, and not murder.

"'In determining whether the provocation is sufficient to reduce homicide to manslaughter, ordinary human nature, or the average of men recognized as men of fair average mind and disposition, should be taken as the standard, unless the person whose guilt is in question be shown to have some peculiar weakness of mind or infirmity of temper, not arising from wickedness of heart or cruelty of disposition.'"

Unlike the case of *Nye v. People*, 35 Mich. 16, the court, in this case, did not stop with the bare definition of "malice" contained in the first part of the quotation, ending with the word "motive," but it included the qualification of that language by what followed. In the case of Nye the jury were told that the offense would be murder if Nye and Betts, or Betts alone, began the attack. Again, the charge in the case of Nye lost sight of the distinctions between murder and manslaughter, which here were carefully described. This definition of "malice" is one common to the books, being enunciated by a celebrated judge in a celebrated case, and the use of the term "*malo animo*" is so explained by the context that it was not likely to mislead an unlearned juror. We discover no error in the charge.

The remaining question arises in connection with the defense of irresponsibility. Testimony was introduced upon the part of the respondent tending to show his mental condition. The people offered testimony to rebut this. A question is raised over the competency of some of these rebutting witnesses, it being contended that they did not state sufficient circumstances to show that they had the requisite knowledge of respondent's condition. It is asserted that it is as necessary that the witness should detail the circumstances upon which he predicates the opinion of sanity as of insanity. We think counsel is right in the assertion that a witness must state his oppor-

tunities for observation in both cases, and in neither can he state too many of the circumstances which have come under his observation that throw light upon the subject, and lead him to a conclusion. No witness should be allowed to state his opinion, one way or another, until there is some evidence tending to show that he has some knowledge.

The subject has recently been discussed in the case of *O'Connor v. Madison,* 98 Mich. 183, where the authorities are collected, and where it is held that a witness cannot be permitted to state that a testator was mentally incompetent until he has detailed some circumstances which the court can say tend to show it. It was there said (after quoting from the opinion of Mr. Justice CAMPBELL in *Beaubien v. Cicotte,* 12 Mich. 459):

"This opinion, if read in the light of the writer's opinion in the case of *White v. Bailey,* 10 Mich. 161, leaves no room for doubting that it is the settled law of Michigan that an opinion that a testator was incompetent can only be given when the witness has testified to circumstances upon which it is predicated, and which to some extent justify it. * * * The extent to which such proof must go cannot be limited by an inflexible rule. It must depend upon the familiarity of the witness with the testator, the character of the disqualification, the nature and number of extraordinary circumstances detailed, and proximity to the act involved in point of time. Taken as a whole, they should move the judicial discretion of the trial judge, by apprising him that the witness may fairly doubt the competency of the person upon reasonable grounds."

But there is a difference in the nature of the testimony requisite as bases for opinions in the two cases of sanity and insanity. The former is the normal condition; the latter, the abnormal. The latter is based upon unnatural conduct; the former may safely rest upon the absence of unnatural action or language. Once it is shown that the witness has a sufficient acquaintance under circumstances

that give a reasonable opportunity for judging, and the testimony that he saw nothing unusual or abnormal is competent. What is required to show a sufficient opportunity depends upon circumstances which may properly move the judicial discretion, the testimony being more or less valuable as the circumstances are convincing. In the language of that case, when, "taken as a whole, they move the judicial discretion of the trial judge, by apprising him that the witness may believe in the competency of the person upon reasonable grounds," the opinion may be given. The right to cross-examination is a safeguard, and, as stated in *O'Connor v. Madison*, it is within the power of the trial judge to allow opposing counsel to sift the witness thoroughly before admitting the opinion, if there is doubt about his competency; and there is additional safety in the fact that the opinions of witnesses, when given, carry no more weight than the jury shall find them justly entitled to. The several witnesses whose testimony is said to be inadmissible gave testimony of some circumstances showing some opportunity to judge. There is no force in the claim that some of this testimony was given upon the introduction of the people's case, instead of on rebuttal. It was unnecessary to repeat it in connection with the opinion. Each of them stated some circumstances in connection with respondent's troubles, and we think might properly testify that they saw nothing to indicate insanity.

The following question was asked, and ruling and answer made:

"Germain Thebault, recalled in rebuttal for the people, testified as follows:

"'I have already testified that I knew John Borgetto for some time, and had talks with him once in a while.

"'Q. Well, now I ask you, taking into consideration the conversations you have had with him that you have testified to before, at the jail, at the time you made the

arrest, at the time you arrested his wife, the talk you had with him there, and the other talks you have detailed,—taking into consideration the character of these conversations, his actions at that time, and the way he talked,—what is your judgment as to whether he was sane or insane?'

"To which question, counsel for respondent objected on the ground that no proper foundation had been laid for the opinion of the witness, and that the question was incompetent, which objection was overruled by the court, and to which ruling counsel for respondent then and there duly excepted.

"'A. He seemed to be all right to me.'"

It is insisted that this question was narrow, and should have included all of his observations during the entire period of his acquaintance, in which case he might have answered otherwise. We think this overtechnical, when the respondent's counsel did not take the trouble to attempt to modify the evidence by cross-examination.

We find no error in the record, and the judgment must be affirmed.

McGRATH, C. J., LONG and GRANT, JJ., concurred. MONTGOMERY, J., did not sit.