PEOPLE v FABIAN

1. CRIMINAL LAW—NEW TRIALS—MISUNDERSTANDINGS OF LAW—
OVERWHELMING EVIDENCE—TRIAL STRATEGY.

The fact that a defendant's counsel chose a trial strategy which
amounted to seeking the mercy of the jury when faced with
overwhelming evidence of the defendant's guilt of the crime
charged does not show that counsel misunderstood the law and
does not entitle the defendant to a new trial.

2. CRIMINAL LAW—VOLUNTARY MANSLAUGHTER—PROVOCATION—HOM-
ICIDE—LESSER INCLUDED OFFENSES.

Voluntary manslaughter may result from a temporary excite-
ment induced by an adequate provocation where the delibera-
tion and reflection that marks the crime of murder are not
present; an instruction requiring a jury in a murder trial to
find provocation before considering convicting the defendant of
the lesser offense of manslaughter is not error where the facts
so warrant.

3. CRIMINAL LAW—JURY INSTRUCTIONS—HOMICIDE—MALICE—MAN-
SLAUGHTER.

Instructing a jury in a murder trial that they must find great or
excessive provocation before they can reduce a determination of
murder to manslaughter is not error where the court also
correctly instructed on the element of malice, the essential
difference between murder and manslaughter, and where the
instructions were not objected to and as a whole were not
manifestly unjust.

4. CRIMINAL LAW—APPEAL AND ERROR—JURY INSTRUCTIONS—LACK OF
OBJECTIONS—MANIFEST INJUSTICE.

The Court of Appeals will reverse a criminal defendant's convic-

REFERENCES FOR POINTS IN HEADNOTES

[1] 75 Am Jur 2d, Trial § 229.
[2] 40 Am Jur 2d, Homicide §§ 525, 526.
[3] 40 Am Jur 2d, Homicide §§ 499, 500.
[4] 75 Am Jur 2d, Trial § 906 *et seq.*
[5] 40 Am Jur 2d, Homicide § 520.
[6] 21 Am Jur 2d, Criminal Law § 118.
[7] 21 Am Jur 2d, Criminal Law § 110.

tion for errors in the jury instructions not objected to by the defendant at trial only where such reversal is necessary to correct a manifest injustice.

5. CRIMINAL LAW—HOMICIDE—FIRST-DEGREE FELONY MURDER—SELF-DEFENSE—JURY INSTRUCTIONS—SUA SPONTE INSTRUCTIONS—DEFENDANT AS AGGRESSOR.

A self-defense instruction is not warranted and a trial court's failure to *sua sponte* give one is not error in a trial for first-degree felony murder where the defendant was an "aggressor" and there is no evidence of withdrawal by him.

6. CRIMINAL LAW—WITNESSES—ACCOMPLICES—COMPETENCY OF WITNESSES.

A criminal defendant's accomplice, who has not yet been either tried or sentenced, is not as a matter of law incompetent to testify at the defendant's trial.

7. CRIMINAL LAW—JURY INSTRUCTIONS—HOMICIDE—ARMED ROBBERY —ABANDONMENT.

It is not error to withhold the issue of abandonment from the jury in a trial for first-degree felony murder and armed robbery where the only reference to abandonment at the trial was an unanswered question by defendant's trial counsel, and where the defendant himself gave no such testimony nor was any presented which would support an abandonment theory.

Appeal from Oakland, William P. Hampton, J. Submitted June 7, 1977, at Lansing. (Docket No. 30046.) Decided July 19, 1977. Leave to appeal applied for.

Scott W. Fabian was convicted of first-degree felony murder and armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *James L. McCarthy,* Assistant Appellate Counsel, for plaintiff.

*Gerald A. Fisher,* for defendant.

Before: DANHOF, C. J., and T. M. BURNS and A. E. KEYES,* JJ.

DANHOF, C. J. Defendant was convicted by a circuit court jury on March 8, 1976 of one count of first-degree felony murder in violation of MCLA 750.316; MSA 28.548 and one count of armed robbery in violation of MCLA 750.529; MSA 28.797. Defendant appeals as of right.

Defendant Fabian and three other men planned and carried out a burglary of the residence of Mr. William Brown who had once been defendant's employer. On the night of November 6, 1975 the four men armed with two guns drove to the Brown farm. The caretaker of the farm who lived in a trailer separate from the main house was taped up by the four men. Two additional guns were taken by the men from the caretaker's trailer. The men then went to the farm house and broke in. Their goal was to carry away the gun collection which they knew Mr. Brown had in the house. In an upstairs bedroom Mrs. Brown was awakened by the sounds of the burglary. She awakened her husband who proceeded to go downstairs carrying a loaded shotgun. Mr. Brown came upon one of the burglars in the house. The burglar took flight and Mr. Brown fired the shotgun without hitting anyone. At this time the defendant was a short distance from the house, but returned to it upon hearing the shotgun blast. Defendant, armed with a pistol, and decedent, armed with a shotgun, then confronted each other. Apparently both fired their weapons, though it is unclear who fired first. Defendant was not hit. Mr. Brown was struck by a bullet in the face and died shortly thereafter.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Subsequently defendant was arrested, tried and convicted.

On appeal defendant asserts he should be given a new trial because: The trial court gave some instructions to the jury that were erroneous and failed to give other instructions that should have been given, two prosecution witnesses were incompetent to testify, and defense counsel at trial obviously misunderstood the law.

## I

The defense strategy at trial was to ask the jury to return a verdict of guilty of second-degree murder rather than first-degree murder or manslaughter. Defendant now argues that since his trial counsel also admitted that the defendant had committed the burglary and since this was an essential element of the first-degree felony murder charge, a verdict of second-degree murder was effectively foreclosed. This, the defendant contends, clearly shows his trial counsel misunderstood the law. We do not agree. The evidence of defendant's guilt of first-degree felony murder was clear and overwhelming. The fact that defense counsel chose a trial strategy which amounted to seeking the mercy of the jury does not show that he misunderstood the law.

## II

The jury was instructed three times. The instruction as to the lesser included offense of manslaughter contained *inter alia* the following:

"The crime of murder may be reduced to Voluntary Manslaughter if the killing is committed under the influence of passion or in the heat of blood produced by

an adequate provocation or before a reasonable time has lapsed for the blood to cool.

"Manslaughter is distinguished from murder in the following respects. Manslaughter is the unlawful killing of one human being by another without malice, expressed or implied. It may be an intentional killing. The killer may intend to kill the deceased, but it is brought about by some great provocation; that is, the killer has been excessively provoked and, as a result of such provocation and while under the spell, the accused killed the deceased. The killing must be done not only under great provocation in order to reduce the gravity of the offense to Manslaughter, but it must have been done while still in the heat of passion and before the passions have had time to subside and the blood to cool. It must be done not only under great provocation and under the influence of passion, but before the passions have had time to subside and reason to resume its normal course.

"As I have said, malice which is present in First and Second Degree Murder is not present in the crime of Manslaughter."

Defendant contends that this instruction erroneously required a jury finding of provocation in order to convict him of manslaughter. He cites both a statutory and common law definition of manslaughter which would require no finding of provocation.

The statutory provision cited, MCLA 750.329; MSA 28.561, is one of several which define certain killings as manslaughter. These provisions are not exclusive, however, and quite aside from the statutes manslaughter is a crime defined in the common law. *People v Townes,* 391 Mich 578, 588; 218 NW2d 136 (1974). In *People v Ora Jones,* 395 Mich 379, 393; 236 NW2d 461 (1975), it was stated:

"Michigan has a statutory definition of manslaughter which defendant alleges fits the facts of this case and

on which an instruction should have been given. MCLA 750.329; MSA 28.561 provides:

"'Any person who shall wound, maim or injure any other person by the discharge of any firearm, pointed or aimed, intentionally but without malice, at any such person, shall, if death ensue from such wounding, maiming or injury, be deemed guilty of the crime of manslaughter.'

"We agree that on the evidence presented in this case the trial court would have been required if requested to instruct on this offense.

"Since no such instruction was requested, there was no reversible error in failing to give it. *People v Henry,* 395 Mich 367; 236 NW2d 489 (1975)."

In *People v Townes, supra,* at 590 it was stated:

"A defendant properly convicted of voluntary manslaughter is a person who has acted out of a temporary excitement induced by an adequate provocation and not from the deliberation and reflection that marks the crime of murder."

Under the circumstances of this case the use of the provocation instruction was not error.

Defendant further argues that the use of the adjectives "great" and "excessive" to modify provocation was error. A similar instruction was approved in *People v Milhem,* 350 Mich 497, 506; 87 NW2d 151 (1957).

Contrary to the defendant's assertion, the record shows that the trial court correctly instructed the jury that the essential difference between murder and manslaughter is that the element of malice is required for murder but not for manslaughter. The trial court also properly defined malice by instructing "the term 'malice' signifies a wrongful act done intentionally without legal justification or excuse".

Viewed as a whole, we believe that the manslaughter instructions were adequate under the circumstances of this case. Since the defendant failed to object to these instructions at trial we will reverse only to correct a manifest injustice, which we do not find here.

Defendant did object to an amplified definition of malice given to the jury in the second supplemental charge in which the trial court stated:

"Now with regard to malice which I have just defined for you as signifying a wrongful act done intentionally without legal justification or excuse, and I have already told you malice is an element of First Degree Murder and Second Degree Murder but not the element of Manslaughter.

"I instruct you regarding malice, that the law implies in an unprovoked and inexcusable killing, the existence with a disposition which the law terms malice aforethought. If a man kills another suddenly and without provocation, the law implies malice and the offense is murder."

In *People v Rosemary Gibson,* 71 Mich App 543, 553–554; 248 NW2d 613 (1976), an essentially similar instruction was approved. The Court pointing out that:

"The underlying question before this Court is, again, whether the charge took away from the jury's determination that important element of 'malice aforethought'. We think not. In the instant case, the trial judge instructed the jury that should they find an 'unprovoked, unjustifiable, or inexcusable killing' the law will imply malice. The preliminary facts were for the jury to decide. Nothing was taken away from their determination. Certainly, upon finding an 'intentional, unprovoked, unjustifiable and inexcusable killing' the jury was mandated by the law to find malice aforethought, as that is the definition of the term."

Viewed as a whole we find that the trial court's manslaughter instructions contained no reversible error.

## III

Defendant contends that the trial court erred in not *sua sponte* instructing on self-defense. Defendant's citation of *People v Townes, supra,* is inapposite since there was no question of a *sua sponte* self-defense charge in that case, and because there the Court pointed out that the defendant was not an "aggressor" merely because he threatened the decedent's property. The facts of this case are quite different. Here the defendant was an "aggressor", and the evidence reveals no withdrawal. Therefore, a self-defense instruction was not warranted and there was no error in failing *sua sponte* to give one.

## IV

We also find no merit in defendant's claim that two of his accomplices were incompetent, as a matter of law, to testify because they had not yet been either tried or sentenced, and thus had a clear motive to please the prosecution. See MCLA 600.2158; MSA 27A.2158. MCLA 600.2159; MSA 27A.2159. *People v Ockaski,* 234 Mich 95, 97; 207 NW 867 (1926).

## V

Defendant's fifth contention of error was that the issue of abandonment was improperly withheld from the jury. In his brief he states, "There was testimony by the defendant at trial that, at a time prior to the firing of the shot which killed

victim, William Brown, the defendant was attempting to *abandon* the burglary". The record shows, however, that it was defendant's trial counsel who made reference to abandonment in an unanswered question. The defendant himself gave no such testimony, nor was any testimony presented which supported an abandonment theory.

Affirmed.

A. E. KEYES, J., not participating.