## PEOPLE v BEARD

1. Appeal and Error—Criminal Law—Preserving Question—Manifest Injustice.

   The Court of Appeals will not reverse a defendant's conviction on the basis of an unobjected-to error, absent a showing of manifest injustice.

2. Appeal and Error—Instructions to Jury—Ambiguous Instructions—Entire Instructions.

   Jury instructions should be read in their entirety to determine whether the trial court resolved an ambiguity in a challenged instruction by other comments it made and instructions it gave where the allegedly erroneous instruction is subject to two or more interpretations; however, this rule should not be used to justify the affirmance of criminal convictions where at least part of the instructions have been patently erroneous.

3. Criminal Law—Intent—Specific Intent—Presumptions—Instructions to Jury.

   Specific intent cannot be presumed as a matter of law from the specific acts of a criminal defendant; however, the mere use of the word "presumption" or its equivalent in instructions to the jury regarding the intent of the defendant does not mandate reversal of the defendant's conviction.

4. Criminal Law—Instructions to Jury—Armed Robbery—Intent —Burden of Proof—Shift of Burden of Proof.

   An instruction to the jury in a case where a defendant was charged with armed robbery and convicted of the lesser included offense of unarmed robbery which, when read in its entirety, permitted but did not require the jury to find that the defendant had the specific intent to commit unarmed robbery, allowed the jury to consider all elements of the crime and to

References for Points in Headnotes

[1] 21 Am Jur 2d, Criminal Law § 533.
[2] 4 Am Jur 2d, Appeal and Error §§ 535, 536.
[3] 21 Am Jur 2d, Criminal Law § 82.
[4] 75 Am Jur 2d, Trial § 719.

infer or presume intent if it so chose did not shift the burden of proof from the prosecution to the defendant as to the issue of intent.

Appeal from Recorder's Court of Detroit, James A. Hathaway, J. Submitted June 16, 1977, at Detroit. (Docket No. 28804.) Decided September 21, 1977. Leave to appeal applied for.

Douglas Beard was convicted of unarmed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*John C. Louisell (Carl Ziemba,* of counsel), for defendant on appeal.

Before: R. M. MAHER, P. J., and N. J. KAUFMAN and F. J. BORCHARD,* JJ.

PER CURIAM. Defendant and a companion were charged with armed robbery of a party store on December 30, 1975, in the City of Detroit. Defendant's companion entered a plea of guilty to a charge of armed robbery, while defendant stood trial and was convicted by a jury of unarmed robbery, MCLA 750.530; MSA 28.798. He was sentenced on April 16, 1976, to 10 to 15 years in prison and appeals as of right.

Defendant assigns two errors to the trial court. First, he claims that the trial court's instruction to the jury to consider each of the seven lesser included offenses was unduly restrictive and coer-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

cive, causing prejudice to the defendant. We cannot agree.

Besides the fact that it was defense counsel who requested jury instructions on armed robbery and six lesser included offenses, defense counsel failed to object to the instructions as given in the instant case. Absent a showing of manifest injustice, this Court will not reverse a defendant's conviction on the basis of an unobjected-to error. *People v Cain,* 67 Mich App 433; 241 NW2d 233 (1976). Defendant did not show how the instruction given by the trial court prejudiced his rights.

Next, defendant contends that the trial court's instruction to the jury regarding specific intent in effect relieved the prosecution of the burden of proving one of the elements of the crime charged, *viz.,* intent.

The trial court instructed the jury as follows:

"You cannot read the Defendant's mind. You cannot tell what was in his mind or in his heart except by the circumstances, by his appearance, by his conduct, by what he said, what he did, and how he acted.

"You have a right to draw reasonable logical inferences from the facts. *It is presumed* members of the jury, *that a reasonable being intends the ordinary consequences of his voluntary acts.*

"While it is true that we cannot perform cranial surgery and look into a man's mind, we judge what is in his mind, what his intentions are, by the way in which he acts, by what he says, what he does at a given time or place, or under any given set of circumstances.

"You do this in your every day lives, I'm sure. People act toward you or in your presence in a certain way, or they speak in a certain way, or they respond to a given situation in a certain way. On the basis of a whole lifetime of experience you say that if he is acting this way, he must mean, he must intend, such and such.

"What you are doing in that situation is that you are

drawing inferences of intent. You are inferring what the person's intent was from the way he acted.

"You are allowed to do this as you sit as jurors. Indeed, you must do it as you sit as jurors, in order to determine the question of intent that is before you.

"In this regard you have a right to draw reasonable logical inferences from the facts which are before you, and also *in this regard you must presume that a reasonable man intends the ordinary and natural consequences of his voluntary acts. That is when a man does something that causes something else to happen, you can presume that he intends that result if it was a natural and probable consequence of the act."* (Emphasis supplied.)

The underscored portions of the instruction may be interpreted as impermissibly shifting the burden of proof from the prosecutor to the defendant. It is also possible to read them as general statements of law, guides rather than commands. When an allegedly erroneous instruction is subject to two or more interpretations, it is logical to read the instructions in their entirety to determine if the trial court resolves the ambiguity by other comments it makes and instructions it gives. See, generally, *People v Benevides,* 71 Mich App 168; 247 NW2d 341 (1976).

We are well aware that the "read as a whole" rule has been severely distorted and abused. Too often, courts have used the rule as a talismanic formula for reaching the result they wished to reach, unmindful of whether the context was a proper one in which to employ the rule. Justifying their decisions under the guise of reading instructions as a whole, courts have affirmed criminal convictions when at least part of the instructions have been patently erroneous. Such use of the rule contravenes the Supreme Court's long-standing doctrine of reversing convictions in cases in which

the trial court has given conflicting instructions, one erroneous and the other without error. See, e.g., *People v Eggleston,* 186 Mich 510; 152 NW 944 (1915), *People v Burkard,* 374 Mich 430; 132 NW2d 106 (1965).

However, as noted above, logic convinces us that this case presents one of those situations in which the "read as a whole" rule should be used as a mechanism for resolving ambiguities in the trial court's language. In this context, use of the rule is not inconsistent with cases such as *People v Eggleston, supra, People v Burkard, supra,* and the conflicting instructions doctrine they espouse.

Read as a whole, the instructions in this case do not shift the burden of proof from the prosecution to the defendant. It is true that Michigan courts have stated that specific intent cannot be presumed as a matter of law from specific acts of the defendant. *People v Smith,* 67 Mich App 145; 240 NW2d 475 (1976), *People v Jordan,* 51 Mich App 710; 216 NW2d 71 (1974), *People v Pepper,* 389 Mich 317; 206 NW2d 439 (1973). But mere use of the word "presumption" or its equivalent does not mandate reversal. *People v Smith, supra,* at 152.

What is significant in the present case and what distinguishes it from cases in which the instruction on presumption of intent has been found erroneous, is that the trial court did not instruct the jury that intent was presumed from the defendant's acts as a matter of law. The instruction does not mislead the jury into believing that as a matter of law defendant had the necessary intent. Read in its entirety, the instruction permitted but did not require the jury to find that defendant had the specific intent to commit unarmed robbery. See *People v Rivera,* 61 Mich App 427; 232 NW2d 727 (1975). The jury was allowed to consider all ele-

ments of the crime and could infer or presume specific intent if it so chose. Consequently, we find no reversible error.

Affirmed.