PEOPLE v GOODARD

Docket No. 21009. Submitted January 4, 1978, at Grand Rapids.—
     Decided April 4, 1978.

     Richard L. Goodard was convicted of first-degree murder in
     Marquette County Circuit Court, Bernard H. Davidson, J. De-
     fendant Appeals. *Held:*

     The trial court committed reversible error by giving an
     instruction to the jury which effectively removed the element of
     malice from the jury's consideration.

     Reversed.

     BEASLEY, J., dissented:

     The instruction which is claimed to be erroneous was not
     objected to in the trial court and because there has been no
     showing of manifest injustice on the record there should be no
     review of the alleged error.

     Further, assuming *arguendo* that the issue had been pre-
     served for review, a reading of the full, total jury instruction
     does not indicate that the defendant was denied a fair trial
     and, therefore, the defendant's conviction should be affirmed.

OPINION OF THE COURT

1. HOMICIDE—MALICE—INSTRUCTIONS TO JURY—UNLAWFUL MOTIVE—
     FIRST-DEGREE MURDER.

     An instruction to the jury in a murder trial on the element of
     malice which states that malice includes every unlawful and
     unjustifiable motive is an erroneous instruction and requires
     the reversal of a defendant's conviction of first-degree murder.

REFERENCES FOR POINTS IN HEADNOTES
[1] 40 Am Jur 2d, Homicide §§ 488, 498 *et seq.*
[2] 75 Am Jur 2d, Trial §§ 628, 920.
[3] 40 Am Jur 2d, Homicide § 510.
[4, 9] 75 Am Jur 2d, Trial § 710 *et seq.*
[5, 9] 40 Am Jur 2d, Homicide § 560.
[6] 40 Am Jur 2d, Homicide § 50.
[7] 75 Am Jur 2d, Trial §§ 906, 910.
[8] 75 Am Jur 2d, Trial §§ 604, 614.

2. APPEAL AND ERROR—CRIMINAL LAW—INSTRUCTIONS TO JURY—CON-
   FLICTING INSTRUCTIONS—PRESUMPTIONS.

   A defendant's conviction must be reversed where the trial court
   has given conflicting instructions, one erroneous and one with-
   out error; in such cases it may be presumed that the jury
   followed that instruction which was erroneous.

3. HOMICIDE—MALICE—PERMISSIBLE INFERENCE—PRESUMPTION OF
   LAW—DELIBERATE ACT—UNJUSTIFIABLE KILLING.

   Malice is a permissible inference to be drawn by the jury rather
   than a presumption of law; malice is not always or necessarily
   implied from any deliberate or cruel act nor from an unpro-
   voked, unjustifiable or inexcusable killing.

4. CRIMINAL LAW—ELEMENTS OF CRIME—JURY CONSIDERATION.

   A defendant has an absolute right to a jury determination upon
   all essential elements of a charged offense.

5. HOMICIDE—MALICE—ELEMENTS OF MURDER—JURY CONSIDERATION
   —APPEAL AND ERROR.

   Malice is an essential element of the crime of murder and it is
   reversible error for a trial court to effectively remove the
   element of malice from jury consideration.

6. HOMICIDE—MURDER—MALICE—TERM OF ART.

   Malice as an element of murder is a term of art and does not
   mean malice as used in ordinary speech.

DISSENT BY BEASLEY, J.

7. APPEAL AND ERROR—CRIMINAL LAW—INSTRUCTIONS TO JURY—PRE-
   SERVING ISSUE.

   *A criminal defendant seeking a review of allegedly erroneous
   instructions to the jury must make a timely objection to those
   instructions, absent a showing of manifest injustice.*

8. CRIMINAL LAW—INSTRUCTIONS TO JURY—ENTIRETY OF INSTRUCTIONS
   —PORTIONS OF INSTRUCTIONS—APPEAL AND ERROR.

   *Instructions to the jury are to be read as a whole; assigning error
   to bits and pieces pulled out of context does not advance the
   cause of justice.*

9. HOMICIDE—MALICE—INSTRUCTIONS TO JURY—JURY CONSIDERATION
   —FIRST-DEGREE MURDER—ENTIRETY OF INSTRUCTIONS.

   *A trial court's instructions to the jury on the element of malice
   were not erroneous and a defendant's conviction of first-degree
   murder should be affirmed where the instructions on malice,*

*when read as a whole, did not remove the element of malice from the jury's consideration and do not indicate that the defendant was denied his right to a fair trial.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Gary Walker,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, by *Thomas C. Nelson,* Assistant Attorney General), for the people.

*Janet Tooley,* Assistant State Appellate Defender, for defendant on appeal.

Before: D. F. WALSH, P. J., and R. M. MAHER and BEASLEY, JJ.

PER CURIAM. Convicted after a jury trial of first-degree murder and sentenced to life imprisonment, defendant appeals as of right.

On September 25, 1973, Earl DeMarse was fatally stabbed while on guard duty at the Marquette State Prison. Inmate Gary DeWar testified that the day before the killing, defendant told him he was going to kill the guard the next morning. Defendant allegedly said he would wear coveralls to keep the blood off his clothes. He also showed DeWar a black-handled knife, 10 to 12 inches long.

On the morning the homicide occurred, defendant was seen wearing coveralls. Inmate Richard Patterson testified that he saw defendant holding DeMarse by the shirt and stabbing him with a knife.

Shortly after the homicide occurred, two guards found appellant and two other inmates in the yardshack. They searched the men and returned them to their cells. A pair of bloodstained coveralls was found in the shack about one-half hour afterwards.

A knife was found in the auditorium piano two days after DeMarse was killed. The knife ·was covered with a type-A bloodstain. The victim's blood was type-A. The knife, however, was not the knife defendant had shown inmate DeWar before the killing.

Defendant alleges a number of errors, but we find one issue dispositive. In instructing the jury, the court charged:

"In defining a crime of murder, either first or second degree, I inform you that a necessary element is that the killing must have been done with malice aforethought. *Malice is here used in a technical sense, including not only anger, hatred or revenge, but every other unlawful and unjustifiable motive.*" (Emphasis supplied.)

In *Nye v People,* 35 Mich 16 (1876), the Court declared such an instruction to be erroneous.

"The definition of malice given in the case would remove manslaughter from the catalogue of homicides. Every crime must be attended with an unlawful and unjustifiable motive. Malice includes those which are more wicked, but it does not include them all. There are many unlawful and unjustifiable motives which have never been classed as malicious." 35 Mich at 18.

The erroneous instruction cannot be saved by reference to the instructions which follow. There is clear error in the rest of the instructions. But even if there were not, we must abide by the long-standing rule in Michigan of reversing convictions in cases in which the trial court has given conflicting instructions, one erroneous and the other without error. In such cases, "it may be presumed that the jury followed that instruction which was erroneous". *People v Eggleston,* 186 Mich 510, 514–15;

152 NW 944 (1915). See, also *People v Burkard,*
374 Mich 430; 132 NW2d 106 (1965).

"When an allegedly erroneous instruction is subject
to two or more interpretations, it is logical to read the
instructions in their entirety to determine if the trial
court resolves the ambiguity by other comments it
makes and instructions it gives." *People v Beard,* 78
Mich App 636, 639; 261 NW2d 27 (1977).

The instruction given by the trial court is not
ambiguous or susceptible to differing interpreta-
tions. Reference to the rest of the trial court's
instructions, had they been without error, would
have served no purpose. We presume the jury
followed the erroneous instruction. Therefore, in
accord with *Eggleston, Burkard,* and *Beard* we
must reverse the trial court decision on the basis
of the erroneous instruction.

We are aware of the results reached in *People v
Borgetto,* 99 Mich 336; 58 NW 328 (1894), and
*People v Livingston,* 63 Mich App 129; 234 NW2d
176 (1975), but in light of *Eggleston* and *Burkard,*
we must regard *Borgetto* as implicitly overruled.

There is another serious error in the remainder
of the trial court's instructions. The trial court
charged the jury as follows:

"Therefore, malice is implied from any deliberate or
cruel act against another however sudden.

                    *    *    *

The law implies from such unprovoked, unjustifiable or
inexcusable killing, the existence of that wicked disposi-
tion which the law terms malice aforethought."

In *Maher v People,* 10 Mich 212 (1862), the
Supreme Court held that malice is not implied by
law.

"The question whether * * * [malice] existed or not, *in the particular instance,* would, upon principle, seem to be as clearly a question of fact for the jury, as any other fact in the cause, * * * and that the court have no right to withdraw the question from the jury by assuming to draw the proper inferences from the whole, or any part of, the facts proved, as a presumption of law." 10 Mich at 217–218. (Emphasis in original.)

More than a century later, in *People v Martin,* 392 Mich 553; 221 NW2d 336 (1974), the Supreme Court reaffirmed the holding of *Maher v People, supra.*

"Michigan has long ago considered malice a permissible inference to be drawn by the jury rather than a presumption of law." 392 Mich at 561.

Contrary to the trial court's instruction, malice is not always or necessarily implied from any deliberate or cruel act nor from an unprovoked, unjustifiable or inexcusable killing. Malice *may be* implied and the jury may infer it, but the law does not imply malice. The trial court's instruction effectively removed from jury consideration the element of malice.

A defendant has an absolute right to a jury determination upon all essential elements of the charge. *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975), citing *United States v England,* 347 F2d 425, 430 (CA 7, 1965). Malice is an essential element of the crime of murder. *People v Morrin,* 31 Mich App 301; 187 NW2d 434 (1971). The trial court committed reversible error by effectively removing the element of malice from jury consideration.

Finally, the trial court's explanations of the term "malice" are patently erroneous.

"If one without cause inflicts a wrong upon another, we call him wicked and malicious."

The implication from this portion of the judge's instruction is that malice is tantamount to wickedness. Such is not the case.

"Malice aforethought is the intention to kill, actual or implied, under circumstances which do not constitute excuse or justification or mitigate the degree of the offense to manslaughter." *People v Morrin, supra,* at 310–311.

Malice, as an element of murder, is a term of art. Contrary to the implication of the trial court's charge, the term does not mean malice as used in ordinary speech.

"It is well-nigh impossible to communicate to jurors in the arcane jargon of malice aforethought the mental state required. No doubt many jurors are confused, and many, in error but understandably, make up their own working definition out of their own appreciation of what malice aforethought 'must' mean." *People v Morrin, supra,* at 320.

Insofar as it defines malice only in terms of the absence of justifiable circumstances and equates malice with wickedness, the trial court's instruction is reversibly erroneous.

Because the instruction given by the trial court is replete with error, defendant's conviction is reversed.

Beasley, J. *(dissenting).* I respectfully dissent.

Defendant was convicted by a jury of first-degree murder and sentenced to life imprisonment, and now appeals as of right. The majority would re-

verse that conviction on the basis of allegedly erroneous instructions by the trial court.

It is well settled that, absent a showing of manifest injustice, criminal defendants seeking a review of allegedly erroneous instructions to the jury must make a timely objection to those instructions.[1] There was no objection in the within case; indeed, defense counsel expressed satisfaction with the instructions as given. Considering the overwhelming evidence of guilt in the within case and reading the instructions as a whole, I would hold that there was no affirmative showing of manifest injustice on the record and would decline to review the alleged error.

However, assuming *arguendo* that the issue had been preserved for review, I would hold, for the following reasons, that there was no reversible error.

The first of three complained-of instructions is quoted by the majority as follows:

"In defining a crime of murder, either first or second degree, I inform you that a necessary element is that the killing must have been done with malice aforethought. Malice is here used in a technical sense, including not only anger, hatred or revenge, but every other unlawful and unjustifiable motive."

The majority correctly note that the above-quoted instruction given in that exact form, but standing alone, was found to be erroneous by the Supreme Court.[2] However, there was more to the instruction given in the within case. The trial court continued:

---

[1] GCR 1963, 516.2. *People v Spaulding,* 42 Mich App 492, 496; 202 NW2d 450 (1972).

[2] *Nye v People,* 35 Mich 16, 18 (1876). The Court, in *Nye,* stated:

"The definition of malice given in this case would remove manslaughter from the catalogue of homicides. Every crime must be attended with an unlawful and unjustifiable motive. Malice includes those which are more wicked, but it does not include them all. There

"It is not confined to particularly ill-will to the deceased, but is intended to denote an action flowing from a wicked and corrupt motive. A thing done, as the book says, 'malo animo', meaning with an evil mind; with a bad purpose or wrong intention and, therefore, malice *is implied from any deliberate or cruel act against* another however sudden. The time in which the wicked purpose is formed is immaterial. Malice aforethought does not imply deliberation or the lapse of considerable time between the formation and execution of the intent to take life but rather denotes purpose and design. It means malice existing at any time before the act so as to be its moving cause or concomitant."

Subsequent to *Nye v People*,[3] our Supreme Court held that the *Nye* instruction, with additional language virtually identical to that quoted above from the within case, was not erroneous.[4]

I would hold that the instruction, when read as a whole, was not erroneous.[5] I also do not agree with the majority that *People v Borgetto*[6] was

are many unlawful and unjustifiable motives which have never been classed as malicious."

[3] 35 Mich 16 (1876).

[4] *People v Borgetto,* 99 Mich 336, 340; 58 NW 328 (1894). The Court stated:

"Unlike the case of *Nye v People,* 35 Mich 16, the court, in this case, did not stop with the bare definition of 'malice' contained in the first part of the quotation, ending with the word 'motive', but it included the qualification of that language by what followed. In the case of *Nye* the jury were told that the offense would be murder if Nye and Betts, or Betts alone, begun the attack. Again, the charge in the case of *Nye* lost sight of the distinctions between murder and manslaughter, which here were carefully described. This definition of 'malice' is one common to the books, being enunciated by a celebrated judge in a celebrated case, and the use of the term 'malo animo' is so explained by the context that it was not likely to mislead an unlearned juror. We discover no error in the charge."

[5] *People v Borgetto, supra, People v Livingston,* 63 Mich App 129; 234 NW2d 176 (1975). In *Livingston,* the Court reaffirmed the principle that jury instructions are to be considered in their entirety. They are not to be scrutinized line by line by the appellate courts. *See also, People v Frank Johnson,* 58 Mich App 1, 5; 226 NW2d 730 (1975).

[6] 99 Mich 336; 58 NW 328 (1894).

implicitly overruled by *People v Eggleston* and *People v Burkard.*[7] My reading of *Borgetto* indicates that it stands for the proposition that a jury instruction must be read as a whole, and that assigning error to bits and pieces pulled out of context does not advance the cause of justice.

The majority further contend that there was serious error in the remainder of the trial court's instructions on malice. I would hold that there was no reversible error in the instructions when read as a whole. Following the above-quoted instruction from the within case, the trial court defined first-degree murder, then stated:

"Murder in the second degree is similarly defined except the element of premeditation is lacking. If one without cause inflicts a wrong upon another, we call him wicked and malicious, so when one without any legal provocation, justification or excuse intentionally kills another, he is called a murderer. The law implies from such unprovoked, unjustifiable or inexcusable kill-

[7] *People v Eggleston,* 186 Mich 510; 152 NW 944 (1915), *People v Burkard,* 374 Mich 430; 132 NW2d 106 (1965). *Eggleston* and *Burkard* stand for the proposition that where conflicting instructions are given to the jury, one correct and one erroneous, it may be presumed that the jury followed that instruction which was erroneous. The within case is distinguishable from both *Eggleston* and *Burkard.* In *Eggleston,* the court gave one instruction which put the burden on the defendant to prove the defense of insanity by a preponderance of proof and other instructions which clearly indicated that the burden was on the prosecution to prove all the necessary elements of the crime beyond a reasonable doubt—including the sanity of the defendant. In *Burkard,* the conflicting instructions had to do with self-defense—one indicating an erroneous danger-in-fact test and the other indicating the correct reasonable-belief test for self-defense. The result of following the incorrect instruction in either *Eggleston* or *Burkard* would clearly have been manifest injustice to the defendants involved. In the within case, on the other hand, we are not dealing even with two separate instructions, but the continuation of a single instruction. Nor should the second portion of the instruction be considered as conflicting with what followed—the latter portion was but an illumination of the former. At any rate, I cannot believe that the former was so confusing as to mislead the jury as to the meaning of malice, especially when read in the context of the entire instruction. *See also, People v Beard,* 78 Mich App 636; 261 NW2d 27 (1977).

ing, the existence of that wicked disposition which the law terms malice aforethought."

The majority hold that the instruction given by the trial court had the effect of removing the essential element of malice[8] from the jury's consideration and cite *Maher v People*[9] and *People v Martin*[10] in support of their holding. I would find that both *Maher* and *Martin* are distinguishable from the within case.

*Maher* was a prosecution for assault with intent to commit murder where the defendant offered evidence tending to show an adulterous intercourse between his wife and the victim of the shooting on the morning of and within half an hour of the assault. Defendant also offered evidence that he had followed his wife and the victim to the woods and followed the victim to a tavern when the pair came out of the woods. A few minutes before entering the tavern where he shot the victim, defendant had been met by a friend who told him that defendant's wife and the victim had had sexual intercourse in the woods the day before. This evidence was rejected by the court. Evidence was admitted that when defendant entered the tavern he was in a state of excitement and was perspiring heavily. When asked if he had been at work, he replied that he had been across the lake. The question on appeal was whether the evidence offered by defendant regarding the statement his friend made to him had been properly rejected from evidence. The Court held that it had not, and stated:

"It is for the court to define the legal import of the

---

[8] *People v Morrin,* 31 Mich App 301; 187 NW2d 434 (1971).

[9] 10 Mich 212 (1862).

[10] 392 Mich 553; 221 NW2d 336 (1974).

term, malice aforethought, or, in other words, that state of disposition of mind which constitutes it; but the question whether it existed or not, *in the particular instance,* would, upon principle, seem to be as clearly a question of fact for the jury, as any other fact in the cause, and that they must give such weight to the various facts and circumstances accompanying the act, or in any way bearing upon the question, as in their judgment, they deserve: and that the court have no right to withdraw the question from the jury by assuming to draw the proper inferences from the whole, or any part of, the facts proved, as presumption of law. If courts could do this, juries might be required to find the fact of malice where they were satisfied from the whole evidence it did not exist." (Emphasis in original.)[11]

In *Maher,* the question of the existence or nonexistence of the element of malice was, indeed, taken from the jury. They were not allowed even to know of the evidence which would have tended to negate the existence of malice and reduce the severity of the assault charge. By rejecting the evidence offered by defendant, the trial court, in *Maher,* withdrew the question from the jury. He presumed malice existed.

In the within case, there is no evidence issue; the jury had before them all the evidence from which to make a determination *in the particular case* of whether or not defendant had acted with malice aforethought. The trial court did not take that element away from the jury; it merely attempted to provide them with a working definition so *they could determine* whether it existed.

*Martin*[12] is also distinguishable from the within case. In *Martin,* the trial court instructed the jury that if a man kills another suddenly without any warning, "where a deadly weapon is used", the

[11] 10 Mich 212, 217–218 (1862).

[12] 392 Mich 553; 221 NW2d 336 (1974).

law implies malice and the killing is murder. Our Supreme Court held that the instruction effectively eliminated the verdict of manslaughter from the jury's consideration. Since the trial court had charged, as a matter of law, that the use of a deadly weapon implies malice, the jury was left with no alternative other than to logically deduce that, since a deadly weapon was used, the defendant must be guilty of murder. The thrust of *Martin* is that when a jury instruction, read as a whole, obfuscates and confuses the jury, a defendant is denied a fair trial and conviction must be reversed and a new trial granted.[13]

There is no deadly weapon problem in the within case. In that respect, this case is more like *People v Rosemary Gibson,*[14] where an instruction virtually identical to that in the within case was given. The Court's comments on finding the instruction not to be erroneous are instructive. The Court stated:

"Certainly, in the present case, the conclusion is inescapable that the charge does not suffer the same deficiencies that caused reversal in *Martin*. It is, of course, possible, perhaps probable, that many a defendant before this Court will enthusiastically grasp the language 'the law implies malice' in each and every situation and claim reversible error. We think this is wrong and is an incorrect reading of *Martin*.

"The underlying question before this Court is, again, whether the charge took away from the jury's determi-

---

[13] *People v Martin, supra,* p 563, where the Court stated:
"Review of the instructions *in toto* persuades us that the latter consideration must prevail where the chargeable offenses are not adequately defined and the essential elements necessary to establish them are either absent or presented in a manner which creates doubt as to whether the jury understood and appreciated the court's instructions." (Footnote omitted.)

[14] 71 Mich App 543; 248 NW2d 613 (1976).

nation that important element of 'malice aforethought'. We think not. In the instant case, the trial judge instructed the jury that should they find an 'unprovoked, unjustifiable, or inexcusable killing' the law will imply malice. The preliminary facts were for the jury to decide. Nothing was taken away from their determination. Certainly, upon finding an 'intentional, unprovoked, unjustifiable and inexcusable killing' the jury was mandated by the law to find malice aforethought, as that is the definition of the term."[15]

The *Rosemary Gibson* holding was followed also in *People v Cooper*[16] and *People v Fabian*.[17] I would hold, therefore, that the instruction in the within case did not remove the element of malice aforethought from the jury's consideration.

Finally, I am not convinced that the trial court's explanations of the term "malice", when read as a whole, were "patently erroneous". My reading of the full, total jury instruction does not indicate defendant was denied his right to a fair trial.

I would affirm.

---

[15] *People v Rosemary Gibson, supra,* pp 553–554. The Court also noted:

"There is, in fact, no basis here for comparing this to the charge in *Martin*. *Martin* dealt with the use of a deadly weapon in the commission of a homicide. The trial court charged 'if a man kills another suddenly without any warning, where a deadly weapon is used the law implies malice and the killing is murder'. * * * This differs substantially from the situation here, in that the mere finding by the jury that the defendant used a deadly weapon *compelled* their determination in *Martin* that malice was shown regardless of the jury's decision regarding his intent. The use of a weapon in the perpetration of a killing can be insolubly ambiguous; no conclusion of malice can always be discerned solely from its use. However, with the present charge, a jury which finds all of the aforementioned preliminary facts has in fact found malice and the law does conclude malice exists from such a finding. Fundamentally, we submit, this differs from *Martin*." *See also, People v Conway,* 70 Mich App 629; 247 NW2d 317 (1976), *rev'd,* 399 Mich 885 (1977).

[16] 73 Mich App 660; 252 NW2d 564 (1977).

[17] 77 Mich App 52; 257 NW2d 673 (1977). *See also, People v Johnson,* 53 Mich App 329; 220 NW2d 65 (1974).