PEOPLE v GOODARD (ON REHEARING)

Docket No. 21009. Submitted January 4, 1978, at Grand Rapids.—
Decided April 4, 1978. Rehearing granted. Decided on rehearing
October 18, 1978. Leave to appeal applied for.

Richard L. Goodard was convicted of first-degree murder, Mar-
quette Circuit Court, Bernard H. Davidson, J. Defendant ap-
pealed, and the conviction was reversed, 82 Mich App 424
(1978). The people's motion for rehearing was granted. *Held:*

D. F. WALSH, P.J., would hold that the trial court's instruc-
tions to the jury accurately communicated to the jury all of the
components required for a finding of malice. There was no
reversible error, and the defendant's conviction should be af-
firmed.

BEASLEY, J., concurred in the result reached by Judge WALSH
because the jury instructions, when read as a whole, did not
remove the element of malice from the jury's consideration.

Conviction affirmed.

R. M. MAHER, J., dissented. He would hold that the trial
court's instructions effectively removed the element of malice
from the jury's consideration.

OPINION OF D. F. WALSH, P.J.

1. APPEAL AND ERROR—HOMICIDE—FIRST-DEGREE MURDER—INSTRUC-
TIONS TO JURY—MALICE.

*An allegation of error in a trial court's jury instructions on the
element of malice in a trial for first-degree murder does not
require objection at trial in order to be preserved for appeal; if
the instructions were so erroneous as to have denied the
defendant a fair trial, then manifest injustice has been shown.*

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 5.
75 Am Jur 2d, Trial § 623.
[2] 75 Am Jur 2d, Trial §§ 623, 624.
[3] 5 Am Jur 2d, Appeal and Error § 891.
[4] 40 Am Jur 2d, Homicide § 500.
[5] 75 Am Jur 2d, Trial §§ 628, 920.
[6] 40 Am Jur 2d, Homicide § 499.

2. CRIMINAL LAW—INSTRUCTIONS TO JURY—ELEMENTS OF CRIME.

   *The central inquiry in reviewing jury instructions in a criminal case is whether the jury, following the court's instructions, could have convicted the defendant without finding all of the legally required elements; if the context and language of a challenged passage indicates that the jury may have used the statement in question as an operative legal principle in their deliberation, and if the statement is erroneous or misleading, the conviction must be reversed.*

CONCURRENCE BY BEASLEY, J.

3. APPEAL AND ERROR—CRIMINAL LAW—INSTRUCTIONS TO JURY—OBJECTION—MANIFEST INJUSTICE.

   *The Court of Appeals should not review a criminal defendant's allegation of error in the trial court's instructions to the jury where there was no objection to the instructions at trial and where there is no affirmative showing of manifest injustice.*

4. HOMICIDE—INSTRUCTIONS TO JURY—FIRST-DEGREE MURDER—MALICE.

   *A trial court's instructions to the jury on the element of malice in a trial for first-degree murder were not erroneous where those instructions, when read as a whole, did not remove the element of malice from the jury's consideration and do not indicate that the defendant was denied his right to a fair trial.*

DISSENT BY R. M. MAHER, J.

5. APPEAL AND ERROR—CRIMINAL LAW—INSTRUCTIONS TO JURY—CONFLICTING INSTRUCTION.

   *A defendant's conviction must be reversed where the trial court has given conflicting instructions, one erroneous and one without error; in such a case it may be presumed that the jury followed the instruction which was erroneous.*

6. HOMICIDE—MURDER—MALICE—INSTRUCTIONS TO JURY.

   *It is reversible error for a trial court to effectively remove the element of malice from jury consideration in a trial for murder.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Gary Walker,* Prosecuting Attorney (Prosecuting Attorneys Ap-

pellate Service, by *Thomas C. Nelson,* Assistant
Attorney General), for the people.

*Janet Tooley,* Assistant State Appellate De-
fender, for defendant on appeal.

Before: D. F. WALSH, P.J., and R. M. MAHER and
BEASLEY, JJ.

## ON REHEARING

D. F. WALSH, P.J. Defendant, Richard L. Goo-
dard, was convicted after jury trial of first-degree
murder. MCL 750.316; MSA 28.548. He appealed
and we reversed. *People v Goodard,* 82 Mich App
424; 266 NW2d 832 (1978) (BEASLEY, J., dissenting).
The people moved for and we granted rehearing in
an order dated August 31, 1978. On rehearing
defendant's conviction is affirmed and our former
order reversing the conviction is rescinded.

Defendant claims that the trial court gave an
erroneous and misleading instruction on the essen-
tial element of malice. Such an allegation of error
does not require objection at trial in order to be
preserved for appeal. *People v Townes,* 391 Mich
578; 218 NW2d 136 (1974), *People v Liggett,* 378
Mich 706; 148 NW2d 784 (1967), *People v Rose-
mary Gibson,* 71 Mich App 543; 248 NW2d 613
(1976). If the instructions were so erroneous as to
have denied the defendant a fair trial[1], then "man-
ifest injustice" has been shown.[2]

---

[1] The cases cited in the text are authority for the proposition that a
fair trial includes having the jury properly instructed as to the
applicable law. If the jury was so erroneously instructed that its
finding of "malice" did not necessarily include a finding of the legally
necessary components thereof, then the defendant was convicted
without having a necessary element of the crime determined by the
jury. Such a conviction cannot be termed the product of a "fair trial".

[2] In my opinion, the concept of "manifest injustice" is coterminous

As an element of the crime of murder, "malice" has a very specific definition:

"Malice means the defendant intended to kill or that he knowingly created a very high risk of death with knowledge that it probably would result in death and that he did so under circumstances which did not justify, excuse, or lessen the crime." Michigan Standard Criminal Jury Instructions (CJI) 16:3:01, quoted in *People v Fountain,* 71 Mich App 491, 493 fn 1; 248 NW2d 589 (1976). See CJI, Murder Commentary.

It is against that definition that we evaluate the trial court's instructions on malice, which were as follows:

"Malice is here used in a technical sense, including not only anger, hatred or revenge, but every other unlawful and unjustifiable motive. It is not confined to particularly ill-will to the deceased, but is intended to denote an action flowing from a wicked and corrupt motive. A thing done, as the book says, 'malo animo', meaning with an evil mind; with a bad purpose or wrong intention and, therefore, malice is implied from any deliberate or cruel act against another however sudden. The time in which the wicked purpose is formed is immaterial. Malice aforethought does not imply deliberation or the lapse of considerable time between the formation and execution of the intent to take life but rather denotes purposes and design. It means malice existing at any time before the act so as to be its moving cause or concomitant.

"Murder in the first degree is defined as where a person with a sound memory and discretion, willfully

with that of a "fair trial". Our determination whether "manifest injustice" has occurred should not turn on our assessment of the defendant's guilt—we are *not* triers of fact. Rather, our analysis should focus on the question of whether the trial procedures comported with our systemic standards of fairness. If they did not, we must reverse. Fundamentally unfair trial procedure cannot be vindicated merely because we agree with the result.

and unlawfully and unreasonably kills any human being against the peace of this state with premeditation and with malice aforethought, express or implied.

"Murder in the second degree is similarly defined except the element of premeditation is lacking. If one without cause inflicts a wrong upon another, we call him wicked and malicious, *so when one without any legal provocation, justification or excuse intentionally kills another, he is called a murderer. The law implies from such unprovoked, unjustifiable or inexcusable killing, the existence of that wicked disposition which the law terms malice aforethought. The intention may be inferred from the use of a deadly weapon in such a manner that the death of the person assaulted would be the inevitable consequence. Thus, if the defendant Richard Goodard intentionally killed Earl DeMarse without provocation, justification or excuse and with premeditation and malice aforethought, he would be guilty of murder first degree."* (Emphasis added.)

I disapprove much of the instruction insofar as it is arcane and potentially misleading. Such instructions should not be approved automatically simply because they were reproduced in the text of a distinguishable decades-old opinion.[3] However,

---

[3] I consider *People v Borgetto,* 99 Mich 336; 58 NW 328 (1894), to be of uncertain precedential value for the proposition that the instant instructions were not erroneous. *Borgetto* found the instructions given in that case sufficient because of the immediate presence of additional language distinguishing murder from manslaughter, language not present in the instructions before us. Hence, *Borgetto* is inapposite here.

Furthermore, in view of the development of legal thought and the evolution of common language to the point where "it is well-nigh impossible to communicate to jurors in the arcane jargon of malice aforethought the mental state required [to constitute murder]", *People v Morrin,* 31 Mich App 301, 320; 187 NW2d 434 (1971), I consider it unwise to accept instructions because their preadamic language corresponds to that approved in a case from an earlier time. Rather, our analysis should begin by defining the legal components of the element in question and then proceed to determine whether the instructions communicated the requirement that those components must be found before the defendant can be convicted. *See People v Rosemary Gibson,* 71 Mich App 543; 248 NW2d 613 (1976).

my assessment of the above instruction is that it did not constitute reversible error.

The central inquiry in reviewing jury instructions in criminal cases is whether the jury, following the court's instructions, could have convicted the defendant without finding all of the legally required elements. Thus, when we examine the transcript we must always consider the context of a challenged passage to determine the likelihood that the jury considered it as a legal definition or principle to be applied to the facts of the case. If the context and the language indicates that the jury may have used the statement in question as an operative legal principle in their deliberation, and if the statement is erroneous or misleading, the conviction must be reversed regardless of the content of the remaining instructions. See *People v Beard,* 78 Mich App 636; 261 NW2d 27 (1977).[4]

My reading of the first full paragraph of the quoted instructions convinces me that the jury must have considered it no more than introductory. The term "malice" was cast about in a general and (concededly) incorrect fashion, but contained nothing of substance in terms of a legal principle to be applied to the facts.[5]

---

[4] I agree with Judge MAHER's observation that the "read as a whole" rule has been abused by overuse. *People v Beard,* 78 Mich App 636, 639; 261 NW2d 27 (1977). I further agree that clearly erroneous instructions on a material element of a crime mandate reversal. However, as indicated in the text, even the application of such a salutary rule requires that we keep in mind the rationale underlying our review of the instructions. If we can state with near certainty that the jury did not rely upon the challenged instruction in its deliberations, there is no point in reversing the conviction. Needless to say, such a statement can be made legitimately only after careful consideration of the language and its context.

[5] Given the evidence concerning the nature of killing in the instant case, the only question of malice presented was whether the killing was done intentionally. Hence, the instructions should be read to determine whether they required the jury to find *inter alia* an intent to kill as a condition of conviction.

I hasten to add that in a different factual context *(e.g.,* a charge of

The second paragraph of the instructions is clearly a legal definition of first-degree murder. It correctly includes all of the required elements of the crime, including the pertinent type of malice involved in the case. The word "willfully" accurately characterizes the requisite mental element of intent to kill.[6]

The elaboration upon "malice" contained in the emphasized portion of the third paragraph contains all of the components required to find "malice": an intentional killing without legal provocation, justification or excuse. As such, it was a correct instruction.[7] *People v Rosemary Gibson, supra.*

I conclude that the instructions in the instant case accurately communicated to the jury the components required for a finding of malice, and, therefore, did not constitute reversible error.

Defendant's conviction is affirmed.

BEASLEY, J. *(concurring).* After rehearing, I concur in the result reached by Judge WALSH for the reasons indicated in my previous opinion in this case, *People v Goodard,* 82 Mich App 424, 430–437; 266 NW2d 832 (1978).

R. M. MAHER, J. *(dissenting).* On rehearing, I respectfully dissent for the reasons stated in the

---

murder in the perpetration of a robbery) in which there existed the possibility that the jury could have construed such phrases as "unlawful and unjustifiable motive", "wicked and corrupt motive", "bad purpose" to denote something other than intent to kill *(e.g.,* intent to rob), I would not hesitate to reverse. However, the facts of the instant case simply do not lend themselves to that kind of confusion.

[6] *"Willful * * * 2: done deliberately: not accidental or without purpose: INTERNATIONAL, SELF-DETERMINED* <a — injury> < — murder> * * * ."* Webster's Third New International Dictionary (1965), p 2617.

I think that the above definition accurately states the common meaning that a layman would give the term "willful".

[7] *See* fn 3, *supra.*

original majority in this case, *People v Goodard,*
82 Mich App 424; 266 NW2d 832 (1978).